# Flowers & Peagler *v.* W. T. Smith Lumber Co.

### *Action for Breach of Contract.*

(Decided Dec. 15, 1908. 47 South. 1022.)

1. *Contracts; Legality; Restraint of Trade.*—A contract between
two lumber companies by the terms of which each company is to
be confined in its operations in the purchase of timber lands and
lumber to their side of a line drawn through two counties, a dis-
tance of nearly twenty miles, is invalid as in restraint of competi-
tion and trade; and the same is not rendered valid by the convey-
ing of each to the other of certain lands on one or the other side
of the line according to the terms of the contract.

2. *Same; Effect of Illegality; Right to Enforce.*—A contract that
is void because in general restraint of trade cannot be enforced
by an action for breach of the same.

3. *Appeal and Error; Harmless Error; General Charge.*—Where
one party to the suit is entitled to the general charge, rulings ad-
verse to the other party on the trial, if erroneous, are harmless.

APPEAL from Butler Circuit Court.

Heard before Hon. J. C. RICHARDSON.

Action by Flowers & Peagler against the W. T. Smith
Lumber Company for breach of contract. From a judg-
ment for defendant, plaintiffs appeal. Affirmed.

After reciting the names of the parties and the en-
terprise in which they were engaged, the contract re-
cites that whereas, it is of very great benefit and ad-
vantage to both of said parties in the operation of their
said railroad and mills, and in carrying on their busi-

ness generally, that they should not come in conflict
with each other in the purchase of lands and timber for
their respective mills, or in the location of their respect-
ive railroads; and whereas, it will be of mutual benefit
to said parties to have an understanding and agreement,
to be faithfully kept and performed by each of said
parties, that one of said parties shall not buy, own, or
hold, either for himself or for another, any timber or
logs or lands, or operate or be interested in a mill, or
build, own, or operate, or be interested in, a railroad,
on the other side of said line; and whereas, said parties
desire to avail themselves of all the benefit which could
result to them by reason of an understanding and agree-
ment: Now, therefore, in consideration of the premises,
and of the sum of $10 cash in hand paid, by the par-
ties thereto to the other party, etc., the party of the first
part (the defendant) shall not buy, own, hold, or be
interested in any land or timber, nor cause the same to
be bought, and shall not build, own, or operate any mill,
nor build, own, or operate any railroad north of said
line, but in conducting and carrying on its said business,
and in purchasing land, timber, and logs, and in con-
structing rail or other roads, mills, etc., shall confine
itself to the territory altogether south of said land. The
same covenants and stipulations are made with respect
to the same operation by the parties of the second part
(the plaintiffs) to the north side of the line. The line
intended to be designated began at the southwest cor-
ner of section 13, in township 8, range 14, in Butler
county, and extended according to the land in an easter-
ly direction to a point on the Central Railroad in Cren-
shaw county, a distance of over 20 miles. The contract
also contained the stipulation that for each and every
violation of this contract the party violating the same
shall be due to the other party, as liquidated damages.

[Flowers & Peagler v. W. T. Smith Lumber Co.]

a sum equal to on-half the value of the property pur-
chased or caused to be purchased, owned, or held in vio-
lation of this contract, and in any suit between the par-
ties, their heirs, successors, or assigns, for a breach of
violation of this contract, it shall only be necessary to
prove this agrement and violation thereof, the property
purchased or caused to be purchased, owned or held con-
trary to the terms of this contract, and the value thereof,
and plaintiff shall be entitled to a judgment for one-
half the value thereof. This contract is set out in ex-
tenso in the complaint, and it is further alleged therein
that at the time of the making of the contract, and as
a part of the consideration therefor, plaintiffs conveyed
to the defendant certain lands on the south side of cer-
tain lines, and defendant conveyed to the plaintiffs
certain lands on the north side of said line. No refer-
ence is made to these deeds in the contract. The com-
plaint then alleges that defendant purchased from
various persons timber and timber lands in violation of
said contract, and seeks to recover one-half the
value of the property thus purchased as damages.
There was considerable pleading in the case not neces-
sary to be here set out. At the conclusion of the testi-
mony the court gave the general affirmative charge for
defendant.

GREGORY, L. & H. T. SMITH, and POWELL & HAMILTON,
for appellants. Had the contract been in the name of
the majority of the stockholders referred to in the rep-
lications, or in the name of the directors, as the case
may be, they would certainly have been estopped from
denying the authority of W. T. Smith to execute it,
for when one in whose name the contract is made accepts
the benefits of that contract, he estops himself from
denying it was authorized by him.—*Goodman v. Win-*

*ter,* 64 Ala. 410; *Sheffeld v. Harris,* 101 Ala. 564; *Marx v. Clisby,* 130 Ala. 510; *Bell v. Craig,* 52 Ala. 215; *Lindsay v. Cooper,* 94 Ala. 170; *Tobias v. Morris,* 119 Ala. 228; *Smith v. Lusk,* 119 Ala. 394. And a corporation may, by silent acquiescence with knowledge on the part of a majority of its governing body, estop itself from denying that the transaction made on its behalf by one of its officers was in fact authorized by it.—*Bibb v. Hall & Farley,* 101 Ala. 79; *Mobile & Montgomery Rwy. Co. v. Gilmer,* 85 Ala. 434; *Ala. Great Southern R. R. v. South & North Ala. R. R.,* 84 Ala. 578.

Independent of our statute upon the subject, the fraudulent concealment of a cause of action, prevented the running of the bar of the statute, and our statute exempting from the prescribed limitation causes of action based upon fraud, is held to be declaratory only of the common law, and fraud in the concealment of the existence of a cause of action is sufficient, irrespective of whether the action itself is in tort or in contract. —*Wood on Statute of Limitations,* § 275; *Snodgrass v. Branch Bank of Decatur,* 25 Ala. 125; *McCarthy v. McCarthy,* 74 Ala. 554; *Bromberg v. Sands,* 127 Ala. 416 417; *Washington v. Norwood,* 128 Ala. 401.

Where an instrument is executed under the corporate seal of a corporation, the presumption is that the officer who executed the conveyance had authority to execute it.—*Jinwright v. Nelson,* 105 Ala. 399.

The courts will not declare a contract illegal unless its illegality is made to plainly appear.—*Roussillon v. Roussillon,* L. F. 14 Ch. Div. 351; *Mallan v. May,* 11 M. & W. 653-667; *Mills v. Dunon,* 60 L. J. R. (Ch. Div.) Part 1, 363. It is not the form of the contract that makes it void as against public policy, but its effect, and the effect of the contract must depend upon the subject matter to which it relates.—*Gibbs v. Consolidated*

*Gas Co.,* 130 U. S. 396; *Alger v. Thacker,* 19 Pickering, 54; *Trenton Potteries Co. v. Olliphant,* 56 N. J. 680; *Kiefer v. Standard Oil Co.,* 11 Ohio, 114. The contract is not void as in restrainst of trade.—*Tuscaloosa Ice Co. v. Williams,* 127 Ala. 110; *McCurry v. Gibson,* 108 Ala. 451; *Junction R. R. & Co.,* 23 Atl. 287 (49 N. J. Eq. 317); *Beale v. Chase,* 31 Mich. 521; *Oregon St. Nav. Co. v. Windsor,* 20 Wal. 364; *Mathews v. Assoc. Press of N. Y.,* 36 N. Y. 33; *Anthony Hitchcock,* 71 Fed. Rep. 659; *Morse v. The Twist Drill Mach. Co.,* 103 Mass. 373; *Horner v. Gravers,* 7 Bing. 743; *Robbins v. Webb,* 68 Ala. 393; Authorities cited in 24 Am. & Eng. Ency L. p. 851, Note 1.

CRUM & WEIL, J. M. CHILTON, CHAS. P. JONES and STALLINGS & GASTON, for appellees. The principle that, where the record discloses that the plaintiff has no cause of action, then any ruling against him, if erroneous, is error without injury, irrespective of whether the ruling is on demurrer to the complaint, or to the pleas, or in the admission or rejection of evidence, or in the charges given or refused, is, of course, thoroughly well settled in this State; *Pulliam v. Schimp,* 109 Ala. 179; *Holmes v. Hannon,* 59 Ala. 510; *Smith v. Alexander,* 87 Ala. 387; *Kimbrell v. Robinson,* 90 Ala. 339; *L. & N. R. R. Co. v. Johnson,* 128 Ala. 634; *Hill v. McBryde,* 125 Ala. 542; *Griffin v. Bass Foundry Co.,* 135 Ala. 490; *McAlester, etc. v. Florence, etc.,* 128 Ala. 240; *Bienville v. Mobile,* 125 Ala. 178; *Johnson v. Philadelphia Mort. & Trust Co.,* 129 Ala. 515.

The contract is, *by its very terms,* one, the manifest purpose and effect of which was to injure the public, by fixing the price of timber and timber lands owned and held for sale by the public in that vicinity, (and in which neither of the parties to the contract had any property-right, title or interest) at less than its real and true

value, by preventing or stifling competition among the parties to the contract, who were purchasers or contemplated purchasers thereof, and therefore, tended to promote a monopoly, and also to unlawfully restrain trade, clearly inimical to public policy, and void. —*Tuscaloosa Ice Mfg. Co. v. Williams,* 127 Ala. 110; *Fullington v. Kyle Lumber Co.,* 139 Ala. 242; *Southern Ry. Co. v. Jones,* 132 Ala. 437; *Robertson v. Robinson,* 65 Ala. 610; *Moses v. Scott,* 84 Ala. 608; Acts of Ala. 1890-1, p. 438; *Adyston Pipe & Steel Co. v. U. S.,* 175 U. S. 211 (44 L. ed. 136) and notes; *Swift & Co. v. U. S.,* 196 U. S. 375; ( 49 L. ed. 518) ; *Northern Securities Co. v. U. S.,* 193 U. S. 179; (48 L. ed. 679) ; *Bartle v. Nutt,* 4 Pet. 184 (7 L. ed. 825) ; *Fox v. Schoen,* 77 Fed. 29; *Harding v. American Glucose Co.,* 74 Am. St. Rep. 189 and notes; *Strauss v. American Pub. Co.,* 64 L. R. A. 701 and notes; *Moore v. Bennett,* 140 Ill. 69 (33 Am. St. Rep. 216) ; *Union Strawboard Co. v. Bonfield,* 86 Am. St. Rep. 211; *Stanton v. Allen,* 5 Denio, 434 (17 N. Y. Com. Law, 835) ; *Nestor v. Brewing Co.,* 161 Penn. St. 473 (41 Am. St. Rep. 894) ; *Oil Co. v. Adoue,* 83 Tex. 650 (15 L. R. A. 598) ; *Morris, etc. v. Bardey,* 68 Penn. St. 173 (8 Am. Rep. 159) ; *Chaplain v. Brown,* 12 L. R. A. 428) ; *Arnot v. Coal Co.,* 68 N. Y. 558 (23 Am. Rep. 190) ;*Craft v. McConnoughy,* 79 Ill. 346 (22 Am. Rep. 171; *Clark v. Needham,* 84 Am. St. Rep. 559)

ANDERSON, J.—"It may be conceded as being the general rule in all the states, as well as in England, that contracts in general restraint of trade are void as against public policy."—24 Am. & Eng. Ency. Law (2d Ed.) 842; *Harris v. Theus,* 149 Ala. 133, 43 South. 131, 10 L. R. A. (N. S.) 204, and cases there cited. There are a few instances when contracts have been upheld by the courts, notwithstanding they had a tendency to restrain trade, such as sales of a stock or business and

the good will of the vendor, with an obligation not to engage in a similar business or calling in the same locality. Contracts of this kind have been upheld and enforced upon the theory that they did not generally, but only partially, restrain trade, and only to the extent of protecting the purchaser in the enjoyment and use of the business purchased, and which was not otherwise injurious to the public. Contracts, however, whose chief, if not sole, aim is to stifle competition and create a monopoly, will not be enforced, because they are contrary to public policy. And in considering such contracts "courts will not stop to inquire as to the degree of injury inflicted upon the public. It is enough to know that the inevitable tendency of such contracts is injurious to the public."—*Arnold v. Jones Cotton Co.,* 152 Ala. 501, 44 So. 662, 12 L. R. A. (N. S.) 150.

The manifest purpose of the contract under consideration is an attempt by the parties thereto to parcel out between themselves a large area of timber land, by a dividing line running in an easterly direction for many miles, and partially through two counties, and to rid the one of the other as a competitor in the purchase of timber on the respective sides of said line reserved to each of them, with no confines in distance from said line north for the one and from said line south to the other, thus stifling competition, and thereby injuring the public by keeping down the price of timber, through a pool or combination. "You get what timber you can south of said line at your own price, and we get it north of said line at our price." It matters not that they conveyed each other certain tracts of land contemporaneous with the execution of the contract, as that did not amount to such a sale of the business and good will as to bring the transaction within the protective influence of the law. These conveyances simply exchanged certain hold-

[Himes Supply Co. v. Parker.]

ings, so as to place the same on their respective sides of the dividing line, and were but a step in furtherance of the scheme to parcel this vast territory between the two in such a manner as to remove any competition between them in acquiring timber for their respective mills.

As the contract is contrary to public policy, and is therefore void, a breach of same is not actionable at law; and, as the defendant was entitled to the general charge, any errors that may have been committed during the trial, if any there were, were without injury to the appellants, and the judgment of the circuit court is accordingly affirmed.

Affirmed.

Tyson, C. J., and Dowdell and McClellan, JJ., concur.