271 P.2d 468

**VERNER et al. v. REDMAN et al.**

No. 5804.

Supreme Court of Arizona.

June 14, 1954.

Lewis, Roca & Scoville, Phoenix, by Walter Cheifetz, for appellants.

Snell & Wilmer, Phoenix, for appellee.

PHELPS, Chief Justice.

This is an appeal from a judgment of the superior court of Maricopa County enjoining appellants from constructing, maintaining and using any structures, buildings or other improvements upon certain lots located upon the southeast corner of the intersection of Seventh and Glendale Avenues of Maricopa County, Arizona.

The facts are that Reese Verner and wife are the owners of the property involved and were such owners when the original zoning ordinance went into effect in April, 1951. This ordinance classified the four corners at the above intersection for commercial use. A new zoning ordinance was adopted by the board of supervisors on May 29, 1952.

On May 21, 1952, while their property was still zoned *commercial* (but after petitions were in circulation to have it changed to residential A), appellants through their agent Ralph Homes applied to the Maricopa County Zoning Inspector for a permit to build a gasoline service station on the corner and for the construction of a building south along Seventh Avenue for commercial purposes. The application did not show the elevation of the proposed structures nor the placement of water lines, which according to counsel, were required by the Maricopa County Zoning Ordinance then in effect. On the same day the zoning inspector issued to appellants the two building permits as requested. One of the permits issued designated its use as a serv-

ice station and the other for "Com.", presumably meaning commercial.

On May 22 Homes and Son Construction Company began work on said buildings and continued such work until May 27 when they were informed by telephone that the Maricopa County Planning Commission had revoked the permits. This was confirmed on May 29 by letter from the executive secretary of the zoning commission. On June 4 following, the commission rescinded its order of revocation and on June 7 is rescinded its action of June 4.

In other words (if the actions of the planning commission on the dates above mentioned were valid) after June 7 there were no permits in existence.

On June 23, 1952, appellants procured a writ of certiorari out of the superior court of Maricopa County directed to the zoning commission challenging its authority to revoke appellants' permits. The court, after hearing, ordered the writ quashed. After this action by the court appellants resumed construction of the proposed building.

On July 28 the board of supervisors changed the zoning of appellant's property to residential A and on August 14, 1952, the zoning inspector revoked the two building permits theretofore issued to appellants. This action was evidently due to a misunderstanding of the effect of quashing the writ of certiorari. If no permits were in existence there was nothing to revoke.

The only work done by appellants upon the property under their permits was to clear the building site of citrus trees, dig footings for the building and erect plyboard forms for the pouring of the foundation.

On July 1, appellees filed this action in the superior court to enjoin appellants from continuing construction of building on their property. An interlocutory injunction issued which was made permanent on January 20, 1953, and judgment entered accordingly. From this judgment appellants prosecuted this appeal.

Appellants have presented three assignments of error which present three questions for our consideration:

1. Did appellees prove special damages to themselves or any of them?

2. Did appellants acquire a vested right to complete their buildings by virtue of the work they had done thereon prior to the recission of their permits?

3. Did the Board of Supervisors act arbitrarily and capriciously in changing appellants' property from commercial to residential A?

As there is no conflict in the evidence in this case all three questions become questions of law.

That a private individual must both allege and prove special damages peculiar to himself in order to entitle him to maintain a cause of action of this character

is too well-settled to admit of argument to the contrary, unless, as argued by counsel for appellees, judicial notice of such damage may be taken by the court.

> " * * * A fact to be judicially noticed must be certain and undisputable, requiring no proof, and no evidence may be received to refute it. * * *" Utah Const. Co. v. Berg, 68 Ariz. 285, 205 P.2d 367, 370.

Measured by this standard can this court take judicial notice of the fact that any of the appellees herein will sustain special damages as a result of a service station and a commercial building being constructed at the corner of Seventh and Glendale Avenues?

Ed H. Bringhurst who lives near the north end of Wilder Road approximately three and a half blocks from the intersection of Seventh and Glendale Avenues, one of the appellees, was the only witness called in the case either to prove special damages resulting from the building construction involved or who gave any testimony concerning the relative location of the residences of any of the appellees to the intersection of Seventh and Glendale Avenues. Mr. Bringhurst testified that Wilder Road was about equivalent to Fifth Avenue and he lived one and one-half blocks north of Glendale Avenue, that Wilder Road, Glendale Avenue east, Seventh Avenue north and south of Glendale Avenue, Flynn Lane and Lamar Drive just south of the proposed construction, constitutes an area

of ultra-expensive homes most of which cost $40,000 to $50,000 each. After asking the witness in substance if the value of his home would be affected by the construction of a service station at Seventh and Glendale Avenues and objection having been sustained thereto, appellees' counsel took the position that no proof of special damages was required whereupon the court agreed that:

> "The court takes judicial notice of the fact that a commercial building is going to depreciate residential property. That is the reason the ordinance is passed in the first place."

As above observed, no witness testified that his home was adjacent to or in close proximity to the proposed service station and commercial building. Except as hereinafter stated there is nothing in the record to show where any of the appellees resided with respect to said intersection except the witness Bringhurst, nor is there any evidence in the record that the people who reside on Flynn Lane or Lamar Drive are even parties to this litigation.

It has been held that the court will take judicial notice of the fact that a residence adjoining a store building or service station, or across the street or alley from a twenty-story building, or in close proximity (60 feet distant) to a stable will result in special damages to such residential property, still we have been cited no authority to the effect that the court can take judicial notice of the fact that residential

property three and one-half blocks removed from a service station constructed in a residential area will suffer special damages as a result of the presence of such service station in the community and we believe none can be found.

With the exception of a Mr. Street, the Rymers and Mrs. Dick Simis whom the witness Bringhurst testified had lived "adjoining" this property for many years, none of the other parties litigant are shown to be closer thereto than the witness Bringhurst. In fact the relative location of their residences to such property nowhere appears in the record. Just what the witness Bringhurst meant by the word "adjoining" is not clear. If the homes of Simis, Rymer and Street are on Glendale Avenue they cannot all be adjoining the property involved. The same would be true if they were on Seventh Avenue. In any event we are not willing to commit this court to the rule that it can take judicial notice of special damages to property as a result of the proposed construction here involved unless the evidence definitely shows it to be adjacent thereto or in such proximity thereof as to make the fact of damages so certain and undisputable that evidence will not be received to refute it.

We therefore are of the opinion that appellees failed to establish special damages which is a prerequisite to the right to maintain this cause of action.

The second and third questions presented are: Did appellants acquire a vested right under the law to complete the construction of the buildings attempted to be constructed upon the premises in question by virtue of having begun to work thereon before the permits issued to appellees were rescinded, and did the Board of Supervisors act arbitrarily and capriciously in rezoning appellants' property?

While the facts in the case of the City of Tucson v. Arizona Mortuary, 34 Ariz. 495, 272 P. 923, are not the same as here, we believe the principles enunciated therein are controlling in this case. In the Tucson case there was no zoning ordinance in existence at the time the property was purchased and the construction begun. Here the corner was zoned by ordinance as commercial at the time the construction was begun but not at the time it was purchased. In the Tucson case the owners of the lot had begun work of construction but no material amount of work had been done at the time they were notified of the proposed ordinance to prohibit such business in that area. Nevertheless they continued their construction work thereon. Here no material amount of work had been done when the permit was cancelled, and appellant stopped work when the permit was cancelled. In the Tucson case the building sought to be constructed in the restricted area was a mortuary. Here it is a service station, and a commercial building to be used for any business falling within the commercial C zone. This last distinction we believe is immaterial.

The court said in the Tucson case that even though the owners of the lot had suffered financial loss no matter how severe, through things occurring before the protest was made by the citizens of the community, such loss did not give them a vested right to continue a business no matter how long it had been continued if the business is one whose location may be regulated under the police power. Hadacheck v. Sebastian, 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348. In that case the court held that such vested right could not be asserted against the police power. In support thereof it said there must be progress and if in its march private interests are in its way they must yield to the good of the community. So long as the real purpose of passing the ordinance does not amount to an arbitrary and unjust discrimination and has a substantial relation to the general welfare, it will be enforced even though losses may be suffered by the individual as a result thereof. To the same effect is Euclid, Ohio v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016.

Other cases were cited in the Tucson case upholding this view, and although there are a number of cases to the contrary we believe the better rule is that a permittee under a zoning ordinance does not acquire a vested right to complete a building he has started where the work done is inconsequential as in this case. We believe this to be true even though appellants had received a permit under a previous ordinance to build. The case of Wood v. Town of Avondale, 72 Ariz. 217, 232 P.2d 963, cited by appellants was reversed upon the ground that the ordinance under which appellees acted was unconstitutional. Therefore the statement therein quoted from the California case that the revocation of a permit to drill an oil well within the city limits under a zoning ordinance without notice is a violation of the 14th amendment of the United States Constitution was dictum. Trans-Oceanic Oil Corp. v. City of Santa Barbara, 85 Cal.App.2d 776, 194 P.2d 148.

Zoning ordinances, when reasonable, have been universally upheld as a proper exercise of the police power for the protection of the public health and promotion of the general welfare. We are not willing to overrule the holding in the Tucson case. We hold that where the amount of work done is of small consequence as here, appellants acquired no vested right to complete the construction of such buildings, and having acquired no vested right, the Board of Supervisors had the power to rezone said property changing its classification from commercial to residential A.

The judgment is reversed for the reasons hereinabove stated.

STANFORD, LA PRADE, and UDALL, JJ., concurring.

WINDES, Justice (specially concurring).

316

I agree with the majority that the judgment of the lower court should be reversed for the reasons therein stated, but I think that in order that the ends of justice may be best served, a new trial should be ordered and thereby permit appellees to make proof of special damages if possible. At the trial appellees offered to make such proof and upon objection that the witness was not qualified and the court's suggestion that he would take judicial knowledge of special damages, none was proven. My feeling is that under such circumstances, appellees' failure to make such proof was excusable and opportunity should be given to do so.