277 P.2d 248

**Charles A. BONNEY, Appellant,**

v.

**NORTHERN ARIZONA AMUSEMENT COMPANY, Inc., an Arizona corporation, Appellee.**

No. 5796.

Supreme Court of Arizona.

Nov. 29, 1954.

Mangum & Flick, Flagstaff, for appellant.

McQuatters & Stevenson, Flagstaff, for appellee.

UDALL, Justice.

Whether a mutual covenant in the contract before us—restricting the parties from engaging in a competitive business for a stated period of years in a given territory—is violative of our statute, is the sole question now to be determined.

It has always been the policy of the common law to foster trade and promote free competition; most states, including Arizona, have statutes prohibiting, within certain limits, monopolies and combinations of capital, skill, or acts in restraint of trade or tending to suppress competition.

The facts, which are not in dispute, may be summarized as follows:

Charles A. Bonney, defendant-appellant, for a considerable period of time prior to September 20, 1950, had been and was then engaged in operating a vending business consisting principally of pinball machines, shuffle games and like vending machines. Harold Longfellow and wife (who are not parties to this litigation) were then engaged in the business of renting and servicing music boxes, cigarette vending machines and some other amusement devices. On said date appellant Charles A. Bonney, C. C. Cheshire and O. B. Custis agreed to form an Arizona corporation to be known as Northern Arizona Amusement Company, Inc., to be managed by appellant, which corporation would acquire and operate the business of Charles A. Bonney and that of the Longfellows.

The contribution of the appellant to the corporation was his then existing business for which he received 2000 shares of corporate stock (par value $10), plus payment of his personal debts in the sum of approximately $5,000. The contributions of C. C. Cheshire and O. B. Custis amounted to some $25,000 in cash, which made possible the purchase of the Longfellow business and the payment of the Bonney indebtedness. Each of these last-named parties was to receive 2000 shares of capital stock. Pursuant to this agreement the appellee corporation was formed and capital stock issued. Appellant, who was a man of many years of experience in the coin machine business, was elected president of the corporation and employed as its general manager at a salary of $500 per month. In this capacity appellant had personal contact with all customers and coin machine locations of said corporation.

This arrangement continued until February 6, 1952, on which date the majority stockholders discharged appellant as general manager and removed him as president of

the corporation. Fourteen days later appellant and appellee entered into a written agreement by which appellant was to surrender his 2000 shares of capital stock in the appellee corporation, and to receive therefor the coin machine business and property he had originally contributed, plus machines of like nature acquired during the interim—less those machines that had been junked. Appellant's personal indebtedness to the corporation was also to be cancelled. The corporation was to continue in that phase of the business originally acquired from the Longfellows.

The salient portion of the agreement of February 20, 1952, that forms the basis of present litigation, is as follows:

"3. It is mutually agreed: .

"(c) That neither party shall directly or indirectly engage in competitive business for a period of five (5) years from and after March 1, 1952, within Coconino County, Arizona. That is to say, the First Party shall not compete with the Second Party in the sale, distribution or rental of music boxes, coin operated music machines, records and parts therefor, and in the sale, distribution and rental of cigarette vending machines and the sale of cigarettes thereby, and the Second Party shall not compete with the First Party in the sale, distribution and rental of those types of coin operated amusement devices which by this agreement are to be transferred to the First Party from the Second Party for the period and within the areas above described."

The other terms and provisions of the agreement were substantially performed and the mutual covenant not to compete observed until on or about August 1, 1952, when appellant rented to certain of appellee's customers music boxes in violation of the agreement.

Appellee promptly instituted an action seeking an injunction to restrain a violation of their agreement. The trial court granted a temporary restraining order without notice, and after a hearing thereon a temporary injunction was issued. Thereafter when the case came on for trial on its merits judgment was entered enjoining the appellant, until March 1, 1957, from violating the "stay-out-of-business" covenant heretofore set forth. This appeal followed.

Appellant's answer admitted the execution of the agreement and its violation, and it cannot be gainsaid that there was a valuable consideration to support the contract. The defense relied upon in the lower court is the same as that set forth in his sole assignment of error, which reads in part:

"* * * the covenant (in question) * * * constitutes a combination of capital, skill or acts by two or more persons in direct violation of section 74–101, A.C.A.1939, and is therefore illegal, and further is in violation of public policy."

The particular portion of the above statute which the contract allegedly violates is the following: .

158

"A trust is a combination of capital, skill, or acts, by two (2) or more persons for any of the following purposes:

"To create or carry out restrictions in trade or commerce or aids to commerce, or to carry out restrictions in the full and free pursuit of any business authorized or permitted by law;

\* \* \* \* \* \*

"Any such combination is against public policy, unlawful and void, \* \*."

Appellant recognizes we have decided that one engaged in any occupation may sell his stock in trade, including "good will", and contract with the purchaser that he will not compete in the same locality for a time named, and upon violation of such a contract he may be enjoined. Henderson v. Jacobs, 73 Ariz. 195, 239 P.2d 1082. He does not question that the limitations in the contract as to duration and locale are reasonable. His defense is that the contract in question, not being supported by the transfer of "good will", comes within the prohibition of above-quoted statute because appellant is a mere stockholder and hence could not transfer to the appellee corporation the "good will" it already owned. To support this contention he relies upon Dodge Stationery Co. v. Dodge, 145 Cal. 380, 78 P. 879, and the Annotation, "Validity of agreement of stockholder not to engage in business in which corporation is engaged", found in 63 A.L.R. 316. It should be noted that California and some of the other jurisdictions in which this

contention has arisen have statutes which, in effect, provide that any agreement not to enter into competition is void unless ancillary to a sale of good will. Nevertheless, this technical defense has usually been rejected. In the Annotation in 63 A.L.R., supra, cited by the appellant, the following statement of the rule appears at page 318:

" \* \* \* an agreement, in reasonable restraint of trade and not having for its purpose the creation of a monopoly, by which a stockholder, upon the sale or purchase of stock, engages that he will not enter into the business in which the corporation is engaged for an ascertainable time and in a certain territory, is a valid and enforceable contract; but in one jurisdiction (California) this rule is denied."

See also: Durham v. Lewis, 231 Ky. 601, 21 S.W.2d 1004; National Enameling & Stamping Co. v. Haberman, C.C.D.Conn., 120 F. 415; Martin v. Hawley, Tex.Civ. App., 50 S.W.2d 1105; Annotation, 94 A.L.R. 341, 345; and text statement of rule in 36 Am.Jur., Monopolies, Sec. 60:

"A covenant or contract not to engage in business in competition with the stockholder's corporation is held, in the absence of statutory regulation, to be binding on one who is a seller of stock, \* \* \*.

" \* \* \*. The fact that the sale of stock does not transfer any title to the good will of the business—that

being the property of the corporation itself—does not render such agreement invalid."

Certainly the agreement here in question is ancillary to a contract dividing a business and disposing of interests therein, and our statute sets forth no requirement that such contracts also be supported by a transfer of good will.

A contract, said to be violative of our statute as being an illegal restraint of trade, is to be measured by the yardstick set forth in the case of Tucson Federal Savings & Loan Ass'n v. Aetna Investment Corp., 74 Ariz. 163, 245 P.2d 423, 426:

"* * *. We hold that for an agreement to be invalid as a restraint of trade it must be an attempt or must actually tend to control prices or that it *unfairly stifles competition* or the free flow of trade and commerce." (Emphasis supplied.)

We cannot see how the agreement now before us *"unfairly* stifles competition". Appellant severed his connection with and disposed of his interest in a business that had been in great measure dependent upon his skill and ability. There is no question that he was fairly and adequately compensated for his interest in the corporation. The agreement did not tend to create a monopoly as the field of competition was not closed except as to the particular parties affected, and the record reveals that others have since engaged in competition with appellee in the area. The restraint imposed by the agreement upon one party is no greater than the protection required for the other party. See, Tucson Federal Savings & Loan Ass'n v. Aetna Investment Corp., supra. As stated in the Kentucky case of Durham v. Lewis, supra [231 Ky. 601, 21 S.W.2d 1005]:

"It seems quite clear to the court that, as manifested by the record in this case, a stockholder, who has been in active charge of a corporate business, and who has, by reason thereof, acquired a knowledge of and wide acquaintance with producers of the commodities the corporation deals in, may increase the vendibility of his stock by agreeing with the buyer that he will refrain from carrying on or engaging in the same sort of business for a limited time and within reasonable limits as to territory * * * the covenant of the seller is ancillary to the sale of his stock, and may be regarded and treated as *necessary to protect the buyer in the enjoyment of the legitimate fruits of his purchase and to protect him from the unjust use of those fruits by the seller."* (Emphasis supplied.)

The description by District Judge Platt, in the case of National Enameling & Stamping Co. v. Haberman, supra [120 F. 422], well applies to the appellant in the instant case:

"He has all the qualities which render his restrictive covenant of great

value, and, that fact being recognized by the parties, he received $50,000 in addition to his stockholder's share of the fruits of the sale. Possibly his dangerous proclivities were suspected; be that as it may, his superior value was clearly recognized and very well paid for in advance. He ought to be the last man on the list of covenantors to find fault with the bargain which he made, presumably, in the best of faith."

Finally, appellant contends that because this contract is bilateral it is necessarily a combination forbidden by our statute. We cannot see how the fact that this agreement is mutual and reciprocal destroys its validity. This case is dissimilar to that in which two competitors agree to a division of territory to be served by each as in the case of Flowers & Peagler v. W. T. Smith Lumber Co., 157 Ala. 505, 47 So. 1022, so strongly relied upon by appellant. The rule there laid down relates to agreements entered into for an illegal purpose, and does not apply to ancillary covenants of restraint in agreements made for legitimate purposes.

We perceive no legal justification for appellant violating his solemn agreement not to compete for a limited time with appellee's operations in Coconino County. The contract was fairly entered into and is supported by a valuable consideration. The learned trial court, therefore, did not err in enforcing the covenant "to-stay-out-of-such-business."

Judgment affirmed.

PHELPS, C. J., and STANFORD, LA PRADE and WINDES, JJ., concur.