153 P.3d 374

CENTER BAY GARDENS, L.L.C., an Arizona limited liability company; Wood River University Square, L.L.C., an Arizona limited liability company; University Pointe Limited Partnership, an Arizona limited partnership, Plaintiffs/Appellants,

v.

CITY OF TEMPE CITY COUNCIL; City of Tempe, Arizona, a municipal corporation; 1010 E. Lemon, L.L.C., as successor in interest of University Mobile Home Park, L.L.C., Defendants/Appellees.

No. 1 CA–CV 05–0460.

Court of Appeals of Arizona,
Division 1, Department A.

Jan. 30, 2007.

As Amended Feb. 6, 2007.

Gammage & Burnham, P.L.C. By Cameron C. Artigue, Phoenix, Ellen M. Van Riper, Phoenix, Co-Counsel for Plaintiffs/Appellants.

Tempe City Attorney's Office By Marlene A. Pontrelli, Clifford L. Mattice, Janis L. Bladine, Tempe, Attorneys for Defendants/Appellees Tempe.

Richardson & Richardson PC By William R. Richardson, Wilford R. Richardson, Mesa, Attorneys for Defendants/Appellees 1010 E. Lemon L.L.C.

## OPINION

BARKER, Judge.

¶ 1 We address in this opinion the issue of standing as applied to those seeking to challenge zoning variances granted by a city council to an adjacent property owner. For the reasons that follow, we reverse the trial court's decision finding a lack of standing in this case.

## I.

¶ 2 Plaintiffs–Appellants Center Bay Gardens, L.L.C., Wood River University Square, L.L.C., and University Pointe Limited Partnership, (collectively "Center Bay") each own one of three apartment complexes on East Lemon Street in Tempe. The apartment complex that is the subject of the proposed development is also on Lemon Street, directly across the street from Center Bay's apartment complexes. The development proposal for the subject property is for a mixed-use development that would include four stories of housing above three levels of parking, two of which would be underground. Some retail space would be built at street level. A mobile home park currently sits on the subject site.

¶ 3 In April 2003, Meyer Residential, L.L.C. submitted three applications to the City of Tempe regarding the property. One, designated ZON–2003–09, sought to change the zoning on the property from R–4 (multi-family residential) to MG (multi-use general district). A second application, GEP 2003.46, was for a general plan amendment, and the third, SPD 2003.35, sought a preliminary and final planned area development with seven zoning variances and a use permit. On July 8, 2003, Tempe's Planning and Zoning Commission held public hearings on the three applications. Representatives of Center Bay expressed their opposition and concerns both at the hearing and in an earlier letter forwarded to the Commission. The Commission unanimously recommended approval of all three applications to Tempe's City Council.

¶ 4 The Tempe City Council held a hearing on July 17, 2003, on the general plan amendment and a second hearing on August 14, 2003, on all three applications. Representatives of Center Bay appeared at the hearings and voiced opposition to the applications. Center Bay also submitted letters to the City Council outlining its objections. On August 14, 2003, the Tempe City Council unanimously approved all three applications.

¶ 5 On September 4, 2003, Center Bay filed a special action complaint against the City of Tempe Board of Adjustment, the City of Tempe, and Meyer Residential. Count one of the complaint asserted that the granting of the variances was arbitrary, capricious, and an abuse of discretion.[1] Counts two and three sought declaratory judgments that the

1. The use permit was not part of the special action. The permit allows outdoor dining.

City Council had failed to make findings required by law before granting the variances and acted in excess of its authority. Count four sought a declaratory judgment that the zoning change from R–4 to MG constituted illegal spot zoning. Count five sought a declaratory judgment that Tempe's existing general plan was null and void because it had not been ratified by public vote and that therefore the general plan amendment approved by the City Council was also null and void.

¶ 6 In November 2003, University Mobile Home Park, L.L.C. ("UMHP") moved to intervene in the action, explaining that it owned the subject property and that the original defendant, Meyer Residential, L.L.C., had failed to fulfill its purchase obligations and no longer had any interest in the property. Intervention was granted. In June 2004, UMHP moved to dismiss counts four and five, asserting that Center Bay lacked standing to challenge the City of Tempe's zoning change and general plan amendment. UMHP did not challenge standing as to counts one through three, dealing with the variances. UMHP argued that, to have standing, Center Bay was required to demonstrate a particularized injury beyond general economic or aesthetic losses and greater than any injury suffered by the community. UMHP argued that Center Bay had not articulated any particularized harm it would suffer separate from the effects on the community and that therefore Center Bay lacked standing to challenge the Council's decision. Center Bay asserted that, because of the proximity of its property to the development, it would be particularly affected by the development. Center Bay acknowledged that its objection to the development was economically motivated but also argued that it would suffer special damage because of the increase in the number of dwelling units per acre, the lack of setbacks and landscaping, the height of the proposed structure, and the apparent intent to change the character of the neighborhood through development like the proposed project.

¶ 7 The trial court granted UMHP's motion to dismiss. It found that Center Bay had no standing on the specified counts because it did not claim a particular injury other than general economic or aesthetic losses. The trial court entered judgment dismissing counts four and five on August 26, 2004. Center Bay appealed the court's ruling. This court affirmed. *Center Bay Gardens, L.L.C. v. City of Tempe City Council,* 1 CA–CV 04–0699 (Ariz.App. Aug. 16, 2005) (mem.decision) ("Memorandum Decision").

¶ 8 On March 30, 2004, while the first action was proceeding, UMHP submitted to the Tempe City Council another application, designated SPD 2004.29, for a preliminary and final planned area development with five variances for the same property with a new developer, JPI Apartment Development, L.P. The proposed project was essentially the same as the first. The requested variances were five of the seven sought in the first application.

¶ 9 Tempe's Planning and Zoning Commission held a public hearing on the application and unanimously recommended its approval to the City Council. The Tempe City Council held two hearings on the application and also unanimously approved the application. At each of the three hearings, Center Bay addressed the Commission and voiced its concerns about the project. Center Bay stated that its concerns included those raised as to the first project: the increase in density, the increase in building mass, and the lack of landscaping and setbacks. Center Bay also submitted letters detailing its objections to the project.

¶ 10 In July 2004, Center Bay filed another special action complaint against the Tempe City Council, the City of Tempe, and UMHP ("Appellees"),[2] challenging the Council's decision granting the planned area development and five variances. A subsequent amended special action complaint asserted that the City Council lacked the authority to approve the variances and that if it had the authority

---

2. Center Bay also named JPI Apartment Development, L.P. as a defendant. The parties stipulated to the dismissal of JPI because JPI had terminated its contract to purchase the property and no longer had any interest in the project. UMHP has been replaced on appeal by Appellee 1010 E. Lemon, L.L.C. For ease of reference we refer simply to UMHP.

its actions were arbitrary, capricious, and an abuse of discretion. The complaint further sought declaratory judgments that the City Council failed to make requisite findings, that the City Council lacked the authority to grant one of the variances, and that the City Council lacked the authority to substitute itself for the Tempe Board of Adjustment for the purpose of granting the variances.

¶ 11 In addition to other arguments, Appellees asserted that Center Bay lacked standing to challenge the decision of the City Council to grant the variances and asserted that the prior decision was the "law of the case." Center Bay argued that its amended special action complaint adequately pleaded special damages sufficient to establish standing to maintain the challenge. Specifically, Center Bay relied on its allegations that it would be specially damaged because it owned property adjacent to the proposed project and the value of its property and the quiet use and enjoyment of the property would be compromised if the project were constructed. Center Bay based this claim on the lack of setbacks for the proposed structure, the building mass and height, the lack of landscaping, and the density of the project. Center Bay also alleged that its property would be at an economic disadvantage because it did not enjoy the same land use entitlements granted to the project, and that because its property would directly front the project its apartment units would be less desirable because of the lack of setbacks and landscaping.

¶ 12 In November 2004, the trial court granted the parties' request to consolidate the remaining counts in the first case with the second special action. The trial court granted Appellees' motion to dismiss. The trial court did not base its ruling on the law of the case doctrine. It found that Center Bay's claimed damages were not specific and could be categorized as generalized economic or aesthetic effects for which standing was not appropriate.

¶ 13 Center Bay appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") § 12–2101(B) (2003).

## II.

¶ 14 The trial court's decision in this case, although a ruling on a motion to dismiss a special action petition, was in the nature of a summary judgment. In determining that Center Bay lacked standing, the court relied on the existing record made before the City Council. We therefore treat this matter as a summary judgment. *Blanchard v. Show Low Planning & Zoning Comm'n*, 196 Ariz. 114, 117, ¶ 11, 993 P.2d 1078, 1081 (App. 1999).

¶ 15 In reviewing a motion for summary judgment, we determine de novo whether any genuine issues of material fact exist and whether the trial court properly applied the law. *Eller Media Co. v. City of Tucson*, 198 Ariz. 127, 130, ¶ 4, 7 P.3d 136, 139 (App.2000). We view the facts and the inferences drawn from those facts in the light most favorable to the party against whom judgment was entered. *Prince v. City of Apache Junction*, 185 Ariz. 43, 45, 912 P.2d 47, 49 (App.1996). Unless there are fact issues that require resolution, whether a party has standing to sue is a question of law, which we review de novo. *See Aegis of Arizona, L.L.C. v. Town of Marana*, 206 Ariz. 557, 562, ¶ 16, 81 P.3d 1016, 1021 (App.2003).

¶ 16 We first address the City of Tempe's argument that the law of the case doctrine applies and then turn to the issue of standing.

## III.

¶ 17 "The term 'law of the case' is a rule that the decision of an appellate court in a case is the law of that case *on the points presented* throughout all the subsequent proceedings in the case in both the trial and appellate courts, provided the facts and issues are substantially the same as those on which the first decision rested." *Ziegler v. Superior Court In and For Pima County*, 134 Ariz. 390, 393, 656 P.2d 1251, 1254 (App. 1982). The doctrine is one of "policy and not one of law." *Dancing Sunshines Lounge v. Indus. Comm'n of Ariz.*, 149 Ariz. 480, 482, 720 P.2d 81, 83 (1986); *see also State v. Whelan*, 208 Ariz. 168, 171, ¶ 8, 91 P.3d 1011, 1014 (App.2004) ("The doctrine of law of the

case is a rule of procedure rather than substance. . . ."). Because it is a "harsh rule," courts have created certain exceptions to its application. *Dancing Sunshines Lounge,* 149 Ariz. at 482–83, 720 P.2d at 83–84. One exception is that the rule does not apply when "the issue was not actually decided in the first decision." *Id.* at 483, 720 P.2d at 84.

¶ 18 The Memorandum Decision upon which Appellees make their law of the case argument affirmed only the dismissal of counts four and five of the first special action complaint. *Memorandum Decision* at ¶ 8. As referenced, counts four and five challenged the requests for a zoning change and a general plan amendment; they did not address the variances. The issues in this appeal, however, concern only the grants of the use permit and seven variances from the third application of April 2003 (counts one through three of the first special action) and of the preliminary and final planned area development with five variances for the same

3. Additionally, as to the second special action, the law of the case doctrine is inapplicable as that special action is based on a separate application before the City of Tempe and a separate civil action in the superior court. *See Whelan,* 208 Ariz. at 171, ¶ 10, 91 P.3d at 1014 (App.2004) ("[A]lthough the underlying facts in each prosecution were identical and the charges were the same, there were two separate actions. Neither the law of the case doctrine nor Rule 16.1(d) [Arizona Rules of Criminal Procedure] directly applies in this setting.").

4. We do not base our decision on whether different principles of standing apply to the challenge of a variance, as contrasted with a challenge to a zoning or general plan amendment. *See Bartolomeo v. Town of Paradise Valley,* 129 Ariz. 409, 415–16, 631 P.2d 564, 570–71 (App.1981) (drawing no distinction between the terms "special use permit," "variance," "rezoning," "amendment," and "building permit" for purposes of the legal matter at issue). The Memorandum Decision did not "actually decide" the issue of standing for the variances (making the law of the case doctrine inapplicable), and the Memorandum Decision does not represent precedent as to general principles applicable to standing for zoning contests in general. *E.g.,* Ariz. R. Civ.App. P. 28(c); *Time, DC Freight Lines v. Indus. Comm'n of Ariz.,* 148 Ariz. 117, 118 n. 1, 713 P.2d 318, 319 n. 1 (App.1985) (noting that although memorandum decisions may be cited for establishing the law of the case, they "are not regarded as precedent"). Thus, to the extent that there are differences in analysis between the Memorandum Decision and this opinion, we are free to rule differently.

property with a new developer (the second special action). The Memorandum Decision did not purport to resolve the issue of standing with respect to the variances in either the first or the second special actions. As to the first special action, the variances could have initially been challenged on standing grounds, but were not. As to the second special action, the "issue [concerning variances] was not actually decided in the first decision." *Dancing Sunshines Lounge,* 149 Ariz. at 483, 720 P.2d at 84. This makes the law of the case doctrine inapplicable. *Id.*[3] Thus, we decline to apply the law of the case doctrine in resolving this appeal.[4]

### IV.

¶ 19 Turning to standing, one of Center Bay's alternative requests is that this court adopt the view of several other states that an adjacent property owner has standing to challenge a zoning decision without showing special harm.[5] This court has previously

5. For example, the Massachusetts Supreme Court has stated the rule that "[a]butters entitled to notice of zoning board of appeals hearings enjoy a rebuttable presumption they are 'persons aggrieved.'" *Marashlian v. Zoning Bd. of Appeals of Newburyport,* 421 Mass. 719, 660 N.E.2d 369, 372 (1996). Maine has stated the following: "While we have not as yet declared that any abutting owner has a potential for injury sufficient to confer standing, we have on many occasions found such a relationship sufficient in combination with an additional allegation of injury." *Anderson v. Swanson,* 534 A.2d 1286, 1288 (Me. 1987). In Vermont, the issue is resolved by a statute which allows any property owner "in the immediate neighborhood" to challenge a zoning decision if the decision would not be in accordance with "the policies, purposes or terms of the plan of that municipality." *Kalakowski v. John A. Russell Corp.,* 137 Vt. 219, 401 A.2d 906, 908 (1979). Courts in Illinois appear to follow a rule that allows any adjoining landowner to challenge a zoning decision. *See Truchon v. City of Streator,* 70 Ill.App.3d 89, 26 Ill.Dec. 625, 388 N.E.2d 249, 251–252 (1979); *Anundson v. City of Chicago,* 44 Ill.2d 491, 256 N.E.2d 1, 3–4 (1970); *Bredberg v. City of Wheaton,* 24 Ill.2d 612, 182 N.E.2d 742, 747–48 (1962). Illinois justifies the rule on the grounds that adjoining landowners are more affected than the general public and that the "municipality, concerned primarily with the maintaining of the municipality-wide zoning pattern, might inadvertently compromise or neglect the rights of adjoining landowners in such a lawsuit." *Anundson,* 256 N.E.2d at 3. Hawaii has held that an adjoining landowner has a "le-

stated that "[a]n adjacent property owner who suffers no special damage from the granting of a variance cannot seek judicial review of an administrative decision to grant a variance." *Perper v. Pima County*, 123 Ariz. 439, 441, 600 P.2d 52, 54 (App.1979).[6] Based on current Arizona case law, we find that Center Bay's allegations are sufficient to show the specialized harm necessary to provide standing. Thus, we need not address whether proximity alone creates standing or a presumption of standing.

### A.

■ ¶ 20 In Arizona, a person "aggrieved" by a zoning decision of a legislative body or board may appeal that decision by special action to the superior court. A.R.S. § 9–462.06(K) (1996).[7] To have standing to bring such an action, however, a plaintiff must allege "particularized harm" resulting from the decision. *Blanchard*, 196 Ariz. at 118, ¶ 24, 993 P.2d at 1082. The plaintiff must have suffered an "injury in fact, economic or otherwise." *Aegis*, 206 Ariz. at 562, ¶ 18, 81 P.3d at 1021 (quoting *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 152, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970)). The damage alleged must be peculiar to the plaintiff or at least more substantial than that suffered by the community at large. *Blanchard*, 196 Ariz. at 118, ¶ 20, 993 P.2d at 1082. General economic losses or general concerns regarding aesthetics in the area without a particularized palpable injury to the plaintiff are typically not sufficient to

gal interest worthy of judicial recognition should he seek redress ... to preserve the continued enjoyment of his realty by protecting it from threatening neighborhood change." *East Diamond Head Ass'n v. Zoning Bd. of Appeals of City and County of Honolulu*, 52 Haw. 518, 479 P.2d 796, 798 (1971) (citing *Dalton v. City and County of Honolulu*, 51 Haw. 400, 462 P.2d 199, 202 (1969) (finding that living across the street from proposed high rise buildings that would restrict the scenic view, limit the sense of space, and increase density, was sufficient for standing)). Maryland adopts yet another approach: "An adjoining, confronting or nearby property owner is deemed, prima facie, to be specially damaged and, therefore, a person aggrieved. The person challenging the fact of aggrievement has the burden of denying such damage in his answer to the petition for appeal and of coming forward with evidence to establish that the petitioner is not, in fact, aggrieved." *Bryniarski v. Montgomery County Bd. of Appeals*, 247 Md. 137, 230 A.2d 289, 294 (1967). A landowner whose property is farther away must show special damages. *Id.* at 295.

Thus, among the states that take different approaches than Arizona, no uniform rule emerges automatically granting standing to adjacent property owners. *See* 4 Ziegler, *Rathkopf's The Law of Zoning and Planning* § 63:18 (4th ed.2005) (documenting various approaches among the states).

6. This court made a similar statement in *Buckelew v. Town of Parker:* "Arizona requires that landowners suffer special damage before they have standing to complain about a zoning decision on adjacent property." 188 Ariz. 446, 450, 937 P.2d 368, 372 (App.1996). To support the proposition, this court in *Buckelew* cites to *Verner v. Redman*, 77 Ariz. 310, 271 P.2d 468 (1954). In *Verner*, the Arizona Supreme Court wrote that "a private individual must both allege and prove

special damages peculiar to himself in order to entitle him to maintain a cause of action of this character." *Id.* at 312, 271 P.2d at 469. The cause of action in *Verner* was a suit by neighbors to enjoin the construction of a gas station in a residential area. *Id.* at 311, 271 P.2d at 468. The court did not take judicial notice because the evidence was insufficient to establish that the complaining individuals owned "adjoining" property. *Id.* at 314, 271 P.2d at 470. The court was

> not willing to commit ... to the rule that it can take judicial notice of special damages to property ... unless the evidence definitely shows it to be adjacent thereto or in such proximity thereof as to make the fact of damages so certain and undisputable that evidence will not be received to refute it.

*Id.* The appellant in *Buckelew* argued that *Verner* allows judicial notice of special damages for adjacent property owners. 188 Ariz. at 450–51, 937 P.2d at 372–73. In rejecting the appellant's argument, this court noted that the statement in *Verner* was dicta and thus of no precedential value. *Id.* at 451, 937 P.2d at 373. We further note that the complaining property owners in *Verner* were not contesting a zoning decision, but were seeking to enjoin construction of a gas station. *Verner*, 77 Ariz. at 312, 271 P.2d at 469. Thus, we do not consider that the Arizona Supreme Court has spoken on the issue of whether proximity alone can suffice for standing in a zoning variance contest.

7. Arizona Revised Statutes § 9–462.06(K) states: "A person aggrieved by a decision of the legislative body or board ... may ... file a complaint for special action in the superior court...." We do not consider the "aggrieved person" standard to create a substantially different test than that set forth in *Buckelew, Blanchard*, and the related cases.

confer standing. *Id.* Finally, although proximity is a factor in determining whether a plaintiff has standing, the plaintiff must still demonstrate special damages or particularized harm. *Id.* at 117–18, ¶ 17, 993 P.2d at 1081–82; *Perper,* 123 Ariz. at 441, 600 P.2d at 54.

¶ 21 Center Bay argues that it alleged specific harm peculiar to itself and different from that of the general public. We agree. Among other things that Center Bay alleged were that the "zero setbacks, building mass and height, minimal and non-existent landscaping, and density" of the proposed project created a particularized injury. With respect to density, Center Bay argued in hearings for the first proposed project that it was inappropriate to have "an increase from 24 dwelling units per acre to 63 dwelling units per acre, dwelling units that are all four bedrooms." This is almost a threefold increase. As to the lack of setbacks and building mass, Center Bay alleged that aesthetically their property would be less pleasing because of the obstruction of view and having a five-story structure (as contrasted with a three-story structure), with no landscaping setback, immediately across the street from them.

¶ 22 In *Blanchard,* the plaintiffs lived and had a business within 750 feet of property that had been rezoned to permit construction of a Wal–Mart Supercenter. *Blanchard,* 196 Ariz. at 118, ¶¶ 22–23, 993 P.2d at 1082. The plaintiffs alleged that the use of their property would be adversely affected because of the greatly increased traffic, the noise and pollution from cars, a possible increase in crime, and the lights that would be illuminated in the Wal–Mart parking lot. *Id.* at ¶ 23. The court found that close proximity made it sufficiently likely that the damages alleged might affect their property, giving them standing. *Id.* at ¶ 24.

¶ 23 In contrast, a second plaintiff in *Blanchard* owned property approximately 1,875 feet away from the proposed construc-

tion site. *Id.* at ¶ 21. This plaintiff only made "general allegations of harm" and relied on evidence of "general harm to the area around the parcel in the form of increased traffic and noise." *Id.* The court held that such a showing was insufficient to find standing. *Id.*

¶ 24 Turning to our decision in *Buckelew,* in that case the plaintiff asserted that adjoining property that had been used as a recreational vehicle park for temporary residents was being used as a mobile home park for permanent residents in violation of the zoning ordinance. 188 Ariz. at 449, 937 P.2d at 371. After the board of adjustment denied the plaintiff's request for relief, the plaintiff brought a special action in superior court. *Id.* The superior court found that the plaintiff lacked standing. *Id.* at 449–50, 937 P.2d at 371–72. This court rejected the plaintiff's argument that the court could take judicial notice of special damages based on the proximity of the plaintiff's property to the subject property. *Id.* at 450–51, 937 P.2d at 372–73. This court nevertheless found that the plaintiff had standing based on his allegations that his property shared a boundary with the subject property and was damaged by noise coming from the trailer park, littering and threats of violence by the tenants, fire and health hazards including raw sewage, increased criminal activity, and the destruction of his personal property by children living in the park. *Id.* at 452, 937 P.2d at 374.

¶ 25 In both *Blanchard* and *Buckelew,* we found standing when the plaintiffs alleged specific claims of damage to their use and enjoyment of their property. Close proximity was a factor in each because the nature of the property uses made the harms greater to plaintiffs located close to the property. For example, the court in *Blanchard* found that "proximity makes it sufficiently likely that traffic, litter, drainage, and noise from the project will significantly affect" the closer property, but not the property located further away. *Id.* at 118, ¶ 24, 993 P.2d at 1082.[8] *See also Armory Park Neighborhood*

---

8. Appellees also contend that the Arizona Supreme Court's decision in *City of Phoenix v. Oglesby,* 112 Ariz. 64, 66, 537 P.2d 934, 936 (1975), compels a different result. The case, however, does not support Appellees' contention.

In *City of Phoenix v. Oglesby,* the Arizona Supreme Court stated that "mere loss of value is not a sufficient basis upon which to *invalidate* a zoning ordinance." *Id.* (emphasis added). Standing was never an issue. The challengers in

*Ass'n v. Episcopal Cmty. Servs. in Ariz.*, 148 Ariz. 1, 5, 712 P.2d 914, 918 (1985) (finding standing for residents to seek damages and injunctive relief "because the acts allegedly committed by the patrons of the neighborhood center affected the residents' use and enjoyment of their real property, a damage special in nature and different in kind from that experienced by the residents of the city in general").

¶ 26 Viewing the facts and inferences in a light most favorable to Center Bay, as we must, this development project across the street from the presently existing apartment complex that comes close to tripling the existing density, doubling the existing mass, and dropping previously required landscape setoffs satisfies the standing requirement as set forth in *Blanchard* and *Buckelew*.

## B.

¶ 27 We emphasize that the issue before us is standing. The issue is not whether on the *merits* it was arbitrary and capricious for Tempe to enact the variances; it is whether Center Bay. can even bring the claim to *contend* that the Tempe City Council acted in an arbitrary and capricious fashion.

¶ 28 When resolving standing we look only to whether there have been sufficient allegations of particularized harm, not whether there is a likelihood of success on the merits. *See Dail v. City of Phoenix*, 128 Ariz. 199, 201, 624 P.2d 877, 879 (App.1980) ("Because we determine this case on the basis of standing, we do not reach the merits of these challenges."); *see also Blanchard*, 196 Ariz. at 118–19, ¶¶ 24–29, 993 P.2d at 1079, 1082–83 (finding standing to challenge rezoning but affirming the rezoning decision on the merits nonetheless). Thus, whether or not

Center Bay has a strong case on the merits is not our concern.

## C.

¶ 29 Appellees assert that because the damage can be characterized as being primarily economic in nature, "particularized harm" cannot be shown. We disagree. As noted above, particularized *economic* harm may suffice for standing. *Aegis*, 206 Ariz. at 562, ¶ 18, 81 P.3d at 1021 (stating that the plaintiff must have suffered an "injury in fact, economic or otherwise"). Likewise, the statutory language permitting standing for a "person aggrieved," A.R.S. § 9–462.06(K), does not rule out economic damages as a basis for being aggrieved. Rather, the plain language of the statute would include it. *See Parrot v. DaimlerChrysler Corp.*, 212 Ariz. 255, 257, ¶ 7, 130 P.3d 530, 532 (2006). Also, the language of the Zoning and Development Code of the City of Tempe requires the Board of Adjustment to find by sufficient evidence "[t]hat authorizing the *variance* will not be materially detrimental to persons residing or working in the vicinity, to adjacent property, [or] to the neighborhood." Tempe, Ariz., Zoning and Development Code § 6–309 (Jan. 5, 2006). "Materially detrimental" does not preclude consideration of the economic effects of proposed developments requiring variances.[9]

## D.

¶ 30 We recognize that Center Bay's allegations of particularized harm can also be cast in a setting of an objection to increased competition from a neighboring project. Some states have found potential harm from economic competition as insufficient to confer standing. *See, e.g., Earth Movers of Fair-*

*Oglesby* were contesting the city's refusal to grant their request for a zoning change for their own property. *Id.* at 65, 537 P.2d at 935. They were permitted to challenge the city's decision, prevailed in the trial court, but lost on the merits on appeal in part because the "court is not the appropriate forum to decide zoning issues if the zoning meets constitutional standards." *Id.* at 66, 537 P.2d at 936.

9. Furthermore, parties are not prevented from asserting "selfish" interests in opposition to zoning decisions, nor are boards of adjustment pre-

cluded from considering such interests. *See Aegis*, 206 Ariz. at 569, ¶ 49, 81 P.3d at 1028 (quoting *Coniston Corp. v. Village of Hoffman Estates*, 844 F.2d 461, 467 (7th Cir.1988) ("The law is clear that listening to public opposition to proposed land uses is part of the legislative process of rezoning. Indeed, 'nothing is more common in zoning disputes than selfish opposition to zoning changes. The Constitution does not forbid government to yield to such opposition....' ")).

*banks, Inc. v. Fairbanks N. Star Borough,* 865 P.2d 741, 745 (Alaska 1993) ("We adopt the majority interpretation of 'aggrieved' to deny standing in land use cases to a business competitor whose only alleged injury is potential increased competition."); *Superior Outdoor Signs, Inc. v. Eller Media Co.,* 150 Md.App. 479, 822 A.2d 478, 490 (2003) ("Accordingly, a person is not 'aggrieved' for standing purposes when his sole interest in challenging a zoning decision is to stave off competition with his established business."); *but see City of Miami v. Franklin Leslie, Inc.,* 179 So.2d 622, 624 (Fla.App.1965) (finding that liquor license holder had standing to challenge zoning variance granted to a competitor).

¶ 31 Arizona case law reflects a long-standing policy to promote competition that we do not seek to inhibit. *See Bonney v. N. Ariz. Amusement Co.,* 78 Ariz. 155, 156, 277 P.2d 248, 249 (1954) ("It has always been the policy of the common law to foster trade and promote free competition...."); *Amex Distrib. Co., Inc. v. Mascari,* 150 Ariz. 510, 516, 724 P.2d 596, 602 (App.1986) ("Our society is extremely mobile and our free economy is based upon competition."). This policy may be considered below in a decision on the merits. The issue before us, however, is not whether there will be increased or decreased competition, but whether Center Bay has made allegations of "particularized harm" sufficient to confer standing. *Blanchard,* 196 Ariz. at 118, ¶ 24, 993 P.2d at 1082. As stated above, Center Bay has met this test.

## V.

¶ 32 Center Bay has alleged facts sufficient to confer standing. The decision of the superior court is therefore reversed and this matter is remanded for proceedings consistent with this opinion.

CONCURRING: G. MURRAY SNOW, Presiding Judge, and DONN KESSLER, Judge.