649 P.2d 978

STATE of Arizona, Plaintiff-Appellee,

v.

B BAR ENTERPRISES, INC., an Arizona corporation; Bobby D. Buckner, husband of June Buckner, dealing with his sole and separate property; and Gerolf D. Becker and Paulette C. Becker, husband and wife, Defendants-Appellants.

No. 15847.

Supreme Court of Arizona,
In Banc.

July 28, 1982.

Charles F. Hyder, Former Maricopa County Atty., Thomas E. Collins, Maricopa County Atty., Philip Messinger, Deputy County Atty., Phoenix, for plaintiff-appellee.

Steven H. Schneider, Phoenix, for defendants-appellants.

GORDON, Vice Chief Justice:

This case arose under A.R.S. §§ 12–801 et seq., the Bawdy House Abatement Act. Appellants challenge the constitutionality of that act. Taking jurisdiction under Ariz. Const.Art. 6, § 5(3) and Ariz.R.Civ.App.P. 19(e), we affirm the trial court's denial of appellants' motion to dismiss.

Appellants operated "massage parlors" in Maricopa County. Customers would pay a woman working at the parlor for a massage. The woman would tell the customer that most of the fee would go to the parlor operator and that she worked primarily for "tips." After a brief massage, the woman would ask if there was anything else she could do. If the customer replied affirmatively, a negotiation would ensue over what specific sexual act the woman would perform for what price. When the customer "tipped" the woman the agreed-upon price, she would perform the sexual act.

A.R.S. § 12–802 declares that every building used as a place of prostitution, assignation, or lewdness is a nuisance which shall be abated pursuant to the Bawdy House Abatement Act.[1] The county attorney, pursuant to the authority of A.R.S. § 12–803, filed a civil complaint alleging nuisance and for closure of the building for one year.

---

1. A.R.S. § 12–806 directs that the court order abating the nuisance will provide for the removal and sale of all fixtures used in aiding the

that appellants' massage parlors were buildings being used for the purpose of prostitution. Appellants answered and moved to dismiss the complaint on the ground that the act is unconstitutional. Appellants alleged that the act unconstitutionally invaded their right to privacy and denied them procedural and substantive due process.

Following the county attorney's reply and oral argument, the trial court denied appellants' motion. Thereafter, the parties entered into a stipulation enjoining the use of the subject buildings for prostitution but reserving appellants' right to appeal the constitutionality of the Bawdy House Abatement Act. We consider each challenge below.

## RIGHT TO PRIVACY

Appellants first claim that all citizens, including prostitutes, possess a fundamental right to sexual privacy.[2] They argue that to infringe on this right, the state must show that the challenged statutes are necessary to promote a compelling state interest.

The right to sexual privacy "exists within the context of the intimate sexual relations between consenting adults in *private*." *State v. Bateman*, 113 Ariz. 107, 110, 547 P.2d 6, 9 (emphasis added), *cert. denied*, 429 U.S. 864, 97 S.Ct. 170, 50 L.Ed.2d 143 (1976).

The sexual acts in the instant case did not occur in private. The massage parlors were open to the public and were outside the zone of the sexual privacy right. *Compare Stanley v. Georgia*, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969) (the right to privacy prevents the government from intruding on a person's possession in the home of obscene materials for use solely within the home) *with Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973) (the government may prohibit the use of obscene materials in a public building even if they are seen only by consenting adults who voluntarily pay admission to an enclosed theatre). Appellants' acts were not private; rather, they were public and subject to the state's regulation in this particular case regardless of the existence vel non of a compelling state interest.

## PROCEDURAL DUE PROCESS

The Fourteenth Amendment to the United States Constitution provides that no state may "deprive any person of life, liberty, or property, without due process of law." Appellants claim that the Bawdy House Abatement Act deprives them of procedural due process by allowing: (1) the closing of alleged nuisances before the own-

2. We have serious doubts as to whether appellants have standing to raise this argument. "In order to possess standing to assert a constitutional challenge, an individual must himself have suffered 'some threatened or actual injury resulting from the putatively illegal action.'" *State v. Herrera*, 121 Ariz. 12, 15, 588 P.2d 305, 308 (1978). Because the right to privacy is a personal right, any such right in this case, if it exists, would belong to the prostitute and the customer but not to appellants as owners and operators of the parlors.

In some instances, a party may have standing to protect a constitutional right possessed solely by a third person and not by the party. To have such standing, the party must have a substantial relationship to the third person, the third person must be unable to assert the constitutional right on his or her own behalf, and the failure to grant the party standing must result in a dilution of the third person's constitutional rights. Note, *Standing to Assert Constitutional Jus Tertii*, 88 Harv.L.Rev. 423

(1974). Without deciding the issue, we observe that it is doubtful that appellants' case fits within the third party standing rule.

Standing, however, is a part of the case or controversy doctrine of U.S.Const.Art. III, § 2, cl. 1. Because of this clause, the federal courts constitutionally have jurisdiction only over cases or controversies (which occur only when the parties have standing). Arizona has no analog to the case or controversy provision in its constitution, and our reluctance to consider issues raised where there is no standing is solely a rule of judicial restraint. *See Fraternal Order of Police Lodge No. 2 v. The Phoenix Employee Relations Board*, 133 Ariz. 126, 650 P.2d 428 (1982). Because standing is not a constitutional jurisdictional requirement in the state courts of Arizona and because the state did not raise the standing issue on appeal, we will consider the merits of appellants' claim despite the apparent lack of standing.

ers are given notice and an opportunity to be heard; and (2) the use of reputation evidence to prove a nuisance.

■ A.R.S. § 12–804 allows the trial court to issue a temporary restraining order enjoining the operation of a bawdy house if the county attorney's complaint or affidavit demonstrates the existence of a nuisance to the court's satisfaction. Although not stated in A.R.S. § 12–804, such a restraining order is subject to Ariz.R.Civ.P. 65(d), which, *inter alia*, permits restraining orders issued ex parte to exist only for a short time and requires expeditious hearings after notice to both parties.

In *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), the United States Supreme Court held that the Florida and Pennsylvania replevin statutes violated the procedural due process right to notice and a hearing before depriving a person of possessions. In *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), the Court noted that *Fuentes* dealt with a situation where repossession of goods was permitted without notice or hearing, on the basis of bare conclusionary claims, and without judicial authorization. The *Mitchell* Court held that Louisiana's sequestration statute did not violate procedural due process as interpreted in *Fuentes* because the Louisiana ex parte order could issue only after a court was convinced that relief clearly appeared proper from the specific facts alleged and the defendant was entitled to an expeditious hearing.

■ The temporary restraining order authorized by A.R.S. § 12–804 and Ariz.R. Civ.P. 65(d) is controlled by *Mitchell* rather than *Fuentes*. A nuisance under the stat-

ute must be shown from facts alleged in the complaint or affidavit, only a court can issue the temporary restraining order, the order is of limited duration, and the restrained party can obtain an expeditious hearing.[3] Neither A.R.S. § 12–804 nor Ariz.R.Civ.P. 65(d) is inconsistent with due process.[4]

■ Appellants also argue that A.R.S. § 12–805(B) is unconstitutional. The statute states that "evidence of the general reputation of the building or place [that is the subject of the abatement action] shall be admissible for the purpose of proving existence of the nuisance." Appellants argue that the statute contravenes due process because it would allow proof of the entire case against them to be based solely on reputation evidence.

A.R.S. § 12–805(B) is silent as to the evidentiary weight to be given to the building's reputation. The statute provides only that the building's reputation is admissible to prove that the building is a nuisance. This Court has never held that evidence of the building's reputation alone is sufficient to prove a nuisance, and we need not reach that issue here (although we have serious reservations about the constitutionality of a case proved by only reputation evidence). No trial took place in the instant case. because appellants entered into a stipulation to abate operation of the massage parlors. There is no suggestion in the record that the reputation of the parlors would have been the sole evidence admitted to prove that appellants' buildings were being used as places of prostitution. On the record before us, A.R.S. § 12–805(B) does not operate to deny appellants procedural due process.

---

3. Moreover, any party, other than the state, who requests a temporary restraining order must post a security to indemnify the restrained party against damage resulting from a wrongful restraint. Ariz.R.Civ.P. 65(e). Therefore, if a private citizen pursuant to A.R.S. §§ 12–803, –804 seeks to abate a bawdy house by obtaining a temporary restraining order, the defendant is given additional due process protection.

4. Appellants also lack standing to raise this argument because no temporary restraining order was issued or threatened in this case. Nevertheless, in the absence of the state objecting to appellants' standing, we have considered the merits of appellants' argument. See Note 1, *supra*.

## SUBSTANTIVE DUE PROCESS

Appellants also attack the Bawdy House Abatement Act on substantive due process grounds. They argue that A.R.S. § 12–802 is overbroad because its proscription of buildings where "acts of lewdness" occur could apply to all sexual activity and to private homes. If read this broadly, the statute could be used to declare a private home a nuisance merely because the married couple living there engaged in procreation.

■ Appellants impliedly admit that the facts of the instant case do not fit within the scenario described above.[5] Rather, they contend that the potential overbreadth of the statute has a "chilling" effect on their First Amendment right to sexual privacy.

If appellants' First Amendment rights were involved, they might have standing to raise the overbreadth argument. *See Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). But as discussed above, no First Amendment privacy right of appellants is infringed by the Bawdy House Abatement Act.

The United States Supreme Court has said, "The First Amendment overbreadth doctrine * * * represents a departure from the traditional rule that a person may not challenge a statute on the ground that it might be applied unconstitutionally in circumstances other than those before the court." *Bates v. State Bar of Arizona*, 433 U.S. 350, 380, 97 S.Ct. 2691, 2707, 53 L.Ed.2d 810, 833 (1977). Because appellants have no First Amendment right at issue, they fall within the rule that "[o]ne whose conduct falls within the 'hardcore' of a statute may not complain because of the possibility of imprecision in the application of the statute at its periphery." *State v. Duran*, 118 Ariz.

239, 244, 575 P.2d 1265, 1270 (App.1978). As the state argues, appellants lack standing to raise their overbreadth argument.

■ Appellants also argue that the act is vague. They reason that the action could not be based on acts of prostitution because prostitution denotes illegal sexual conduct and prostitution itself is not illegal in the parts of Maricopa County where appellants' massage parlors are located.[6] They contend, then, that the suit could be based only on acts of lewdness, and lewdness is an unconstitutionally vague term.

Appellants' reasoning is unpersuasive. Prostitution is the performance of sexual intercourse for a fee. The term does not denote illegal sexual conduct, although the act is often prohibited by state or local government. Furthermore, even if the acts of lewdness were at issue, lewdness as used in A.R.S. § 12–802 is not unconstitutionally vague. Interpreting a statute similar to A.R.S. § 12–802, the Illinois Court of Appeals declared, "Although traditionally the term 'lewdness' is viewed as being broader than and including the term 'prostitution,' * * * such terms refer to the same general class of activities which are normally associated with houses of prostitution (or whatever such establishments may be called). They are intended to designate and prohibit sex acts of whatever nature which are performed for money." *City of Chicago v. Geraci*, 30 Ill.App.3d 699, 704, 332 N.E.2d 487, 492 (1975) (citations omitted).

Lewdness defined in this manner is a sufficiently precise term that a person of ordinary intelligence can conform his or her conduct to the law.

Because appellants have mounted no successful challenge to the constitutionality of A.R.S. §§ 12–801 et seq., we affirm the

---

5. The county attorney alleged in the complaint that the buildings were being used for prostitution; no mention was made of acts of lewdness.

6. Although Arizona has provided for the abatement of bawdy houses, A.R.S. §§ 12–801 et

seq., and has prohibited certain activities related to prostitution, A.R.S. §§ 13–3201 et seq., it has not made prostitution itself illegal. Local governmental bodies in Arizona have passed ordinances outlawing prostitution, however.

trial court's denial of appellants' motion to dismiss.

HOLOHAN, C. J., and HAYS and CAMERON, JJ., concur.

FELDMAN, Justice, specially concurring.

I concur in the result, and I concur with the portions of the decision holding that: (1) When applied to acts of prostitution conducted in public, the Act (A.R.S. §§ 12–801 to –810) is not an unconstitutional interference in the prostitutes' and their clients' alleged first amendment rights to sexual privacy. (2) The Act does not violate appellants' fourteenth amendment rights to due process of law. As applied to appellants, it is neither overbroad nor vague. (3) The State may constitutionally "abate" the operation of a business which encompasses the performance of sexual acts for the payment of money.

I agree with the reasoning by which the majority decides these issues. I write because I do not agree that we should decide the other issues raised. That decision should abide a case which presents a specific application of the statute.

Appellants here fall within the "hard core" of the statute. *State v. Duran,* 118 Ariz. 239, 575 P.2d 1265 (1978). They operate a business which they call a "massage parlor" but where—as part of that business—sexual acts are performed for payment of money. In determining the fundamental, substantive constitutionality of the Act, the majority correctly considers appellants' first amendment arguments even though those arguments raise constitutional rights (the sexual privacy of prostitutes and customers) broader than those which appellants could themselves assert. However, in narrowly defining two of the three proscribed acts[1] (prostitution and lewdness), the majority upholds the basic constitutionality of the statutes, leaving possible unconstitutional "imprecision in the application of

the statute at its periphery" to be raised and decided when, as, and if such a case arises.

I would apply the same rule to the two procedural due process problems. The court holds that closure of a business by issuance of a temporary restraining order under A.R.S. § 12–804, without notice to the owner or operator of that business, is not "inconsistent with due process." The majority also holds that A.R.S. § 12–805(B), admitting evidence of "general reputation," is not unconstitutional. This case is before us on a bare record of a complaint and a motion to dismiss. No temporary restraining order was sought or granted, no hearing was held at which evidence of "general reputation" was offered or admitted. On this record, I am unprepared to decide the constitutionality of either of these procedural sections of the Act; the validity of these procedures is dubious at best, and should not be decided until a case involving their application is before us.

Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court. . . . A closely related principle is that constitutional rights are personal and may not be asserted vicariously. . . . These principles rest on more than the fussiness of judges. They reflect the conviction that under our constitutional system courts are not roving commissions assigned to pass judgment on the validity of the Nation's laws. . . . Constitutional judgments . . . are justified only out of the necessity of adjudicating rights in particular cases between the litigants brought before the Court . . . .

---

1. A.R.S. § 12–802 states that buildings used for performance of "acts of . . . assignation" are nuisances, subject to abatement. Such acts are not defined, although there is authority that a "house of assignation" is a house resorted to

for prostitution, *State v. Hesselmeyer,* 343 Mo. 797, 123 S.W.2d 90, 95 (1938), though Webster defines it as an appointment for a meeting, especially for illicit sexual relations.

*Broadrick v. Oklahoma,* 413 U.S. 601, 611–12, 93 S.Ct. 2908, 2915, 37 L.Ed.2d, 830, 839 (1973) (citations omitted).

This rule is applicable to the procedural due process arguments raised by appellants. Since no temporary restraining order was issued against appellants and since no hearing was held at which evidence of general reputation was admitted for any reason, it is neither necessary nor possible for this court to place its seal of approval upon these procedures. They may be constitutional in some applications, but until we have the question before us, we cannot decide it. Questions of procedural due process turn on the facts before the court. Where there are no facts, there is no opportunity to decide the question.