993 P.2d 1078

**William BLANCHARD; Leveta Challis; Veta Cook; Caron Letcher; Carole and Vaughn Thompson, Plaintiffs–Appellants, Cross Appellees,**

v.

**SHOW LOW PLANNING AND ZONING COMMISSION; City Of Show Low; Ed Muder, as Planning and Zoning Administrator, Defendants–Appellees, Cross Appellants,**

**John Menhennet, Trustee of the John Menhennet Living Trust; Wal–Mart Stores, Inc., Real Parties in Interest, Defendants–Appellees.**

No. 1 CA–CV 98–0325.

Court of Appeals of Arizona, Division 1, Department E.

May 25, 1999.

Review Denied Nov. 30, 1999.*

---

* Feldman, J., recused himself and did not participate in the determination of this matter.

Morrill & Aronson, P.L.C. by Martin A. Aronson, William D. Cleavel, John T. Moshier, Phoenix, Attorneys for Plaintiffs–Appellants, Cross Appellees.

Brown & Brown Law Offices, P.C. by Douglas E. Brown, Michael J. Brown, Pinetop, Attorneys for Defendants–Appellees, Cross Appellants.

Gust Rosenfeld by Keri Lazarus Silvyn, Frank J. Cassidy, Tucson, Attorneys for Real Party in Interest, Defendant–Appellee, Wal–Mart Stores.

Ryley, Carlock & Applewhite; P.A. by Samuel P. Applewhite, III, N. Warner Lee, Phoenix, Attorneys for Real Party in Interest, Defendant–Appellee, John Menhennet.

## OPINION

WEISBERG, Judge.

¶ 1 This case involves the appeal of the City of Show Low's (City) rezoning of a parcel of land to accommodate a Wal–Mart Supercenter Store. The crux of appellant's argument is that the City did not follow proper procedures for rezoning the parcel because it held rezoning hearings and approved a rezoning ordinance *before* the parcel was annexed, thereby rendering the rezoning void. For the reasons set forth below, we affirm the trial court's finding that the rezoning was valid and reverse only as to the standing of appellant Challis.

## FACTS AND PROCEDURAL HISTORY

¶ 2 On November 4, 1997, the City Council adopted Ordinance 427 approving the annexation of land located in an unincorporated area of Navajo County. Per statute, the annexation did not become effective until thirty days later on December 3, 1997. See

Arizona Revised Statutes Annotated (A.R.S.) § 9–471(D) (1996).

¶ 3 In October and November, prior to the effective date. of annexation, the City initiated proceedings to rezone a portion of the annexed land from AR–43 agricultural/residential to C–2 general commercial. On October 24, 1997, the City posted and published notice that it would hold a hearing on the issue of rezoning. According to the City, notice was provided "through a display ad in the newspaper, by posting the subject property, and by sending notice to property owners within 300 feet of the subject property."

¶ 4 On November 12, 1997, the City's Planning and Zoning Commission held a public hearing. The hearing was televised on the local cable station. One of the appellants, Carole Thompson, attended the meeting and protested the rezoning plans.

¶ 5 At the November 12 meeting, the Planning and Zoning Commission announced that another hearing would take place before the City Council. That meeting occurred on November 18, 1997. According to the City, notice of this hearing was also "provided through a display ad in the newspaper, posting the subject property, and notice to owners within 300 feet," none of which was statutorily required. See A.R.S. § 9–462.04. This hearing, too, was televised on the local cable channel. According to the City, no one from the public provided any comment at that public hearing.

¶ 6 On December 1, 1997, the City Council voted to adopt Ordinance 428 rezoning to C–2 a portion of the annexed land. Pursuant to statute, the rezoning did not become effective until December 31, 1997, which was after the effective date of annexation. See A.R.S. § 9–462.04(H) (1996). Wal–Mart submitted plans to the City for the proposed construction of a "Super Wal–Mart" store on a portion of the annexed and rezoned property, as well as on a nine-acre parcel that was already zoned C–2.

¶ 7 On March 2, 1998, appellants, Carole and Vaughn Thompson, William Blanchard, LeVeta Challis, Veta Cook, and Caron Letcher, as owners of property located near the annexed parcel or as residents of Show Low,

filed a complaint for special action relief in superior court, alleging that the City had "exceeded its jurisdiction by rezoning property before that property had been annexed to the City." Appellants asserted that A.R.S. section 9–471(L) prohibited the initiation of any rezoning procedures prior to the annexation of the subject property.

¶ 8 Because the Planning and Zoning Commission's hearings and vote to rezone and the City Council's vote to adopt the rezoning ordinance all took place prior to the December 3 effective date of the annexation, appellants argued that the rezoning was ineffective. They also argued that the rezoning was invalid because the City failed to give adequate notice to the county pursuant to A.R.S. section 9–462.04(A)(2) and failed to comply with A.R.S. section 9–462.07 (1996). The City and Wal–Mart countered with motions to dismiss, arguing that appellants (1) lacked standing to contest the rezoning and (2) misinterpreted the requirements of the applicable statutes.

¶ 9 The trial court held hearings on April 7 and April 14, 1998, at which, upon stipulation of the parties, the court heard evidence on both the merits of the complaint and the motions to dismiss. The trial court found that the three plaintiffs who owned property closest to the annexed parcel—Carole and Vaughn Thompson (henceforth referred to collectively as "the Thompsons") and LeVeta Challis—had standing to challenge the rezoning, while the other plaintiffs did not. The court also found that the only flaw in the procedures followed by the City was that certain rezoning procedures predated the date of the adoption of the ordinance to annex the parcel. Notwithstanding, because the court further found that the City had substantially complied with the statutory requirements, it concluded that the rezoning was valid.

¶ 10 Appellants have timely appealed. They ask us to reverse the trial court's finding that Blanchard, Cook, and Letcher do not have standing. They also ask us to reverse the court's finding that the rezoning of the parcel was carried out in substantial compliance with the relevant statutes and to order that the parcel remain zoned as AR–43 agri-

cultural/residential. The City, John Menhennet, Trustee of the John Menhennet Living Trust, and Wal–Mart cross-appeal, arguing that the trial court erred in finding that the Thompsons and Challis have standing to challenge the rezoning. We have jurisdiction pursuant to A.R.S. section 12–2101(B).

## STANDARD OF REVIEW

¶ 11 Because the trial court in considering the motion to dismiss heard evidence extrinsic to the complaint, we treat this motion to dismiss as a motion for summary judgment. *See Frey v. Stoneman*, 150 Ariz. 106, 109, 722 P.2d 274, 277 (1986). We review a grant of summary judgment to determine whether a genuine issue of material fact exists and to determine whether the trial court correctly applied the law. *See Matter of Estate of Johnson*, 168 Ariz. 108, 109, 811 P.2d 360, 361 (App.1991). In so doing, we view all facts and the reasonable inferences therefrom in the light most favorable to the party against whom the judgment was entered. *Prince v. City of Apache Junction*, 185 Ariz. 43, 45, 912 P.2d 47, 49 (App.1996). We review the denial of a motion for summary judgment for an abuse of discretion. *See Salt River Valley Water Users' Ass'n v. Superior Court*, 178 Ariz. 70, 74, 870 P.2d 1166, 1170 (App.1993). We review questions of statutory interpretation *de novo*. *Young v. City of Scottsdale*, 193 Ariz. 110, 112, 970 P.2d 942, 944 (App.1998).

## STANDING

¶ 12 The Thompsons own property located diagonally across the Show Low Lake Road/ South White Mountain Road intersection approximately 750 feet from the rezoned parcel. Challis owns property approximately 1,875 feet south of the rezoned parcel; Veta Cook resides on Challis's property. William Blanchard and Caron Letcher are City residents, and Letcher also owns and operates a flower shop located approximately three-quarters of a mile north of the rezoned parcel. All of the parties claimed standing because they were either taxpayers or because they owned property either in Show Low or near the rezoned parcel that they alleged would be harmed by the rezoning.

¶ 13 Appellees argued below that all appellants lacked standing to challenge the rezoning. They maintained that taxpayer status alone was not sufficient to confer standing. They further maintained that even the Thompsons and Challis, whose properties were located closest to the rezoned parcel, did not have standing because neither property was adjacent to the parcel and because there was no showing of any particularized harm to either.

¶ 14 The trial court found that the Thompsons and Challis had standing because "the properties of Thompson and Challis are located in such close proximity to the subject property ... that the rezoned use of [the] property will result in specific damages to their properties different [from] and greater than the effects upon the general public." However, the court did not find that any of the other parties had standing.

¶ 15 Appellees argue, and we agree, that mere taxpayer status is insufficient to confer standing on the parties. The cases relied upon by appellants to support this standing argument, *Smith v. Graham County Community College Dist.*, 123 Ariz. 431, 600 P.2d 44 (App.1979), and *Ethington v. Wright*, 66 Ariz. 382, 189 P.2d 209 (1948), are cases in which taxpayers were found to have sufficient standing to question expenditures of public monies. Because no public funds are at issue in the rezoning of this parcel of land, taxpayer status alone does not confer standing in this case.

¶ 16 Appellees further argue that the trial court erred in finding that the Thompsons and Challis had standing because neither owns property directly adjacent to the rezoned parcel. Appellees do not cite any authority for this proposition, but rely on *Buckelew v. Town of Parker*, 188 Ariz. 446, 937 P.2d 368 (App.1996), in which the parties did own property adjacent to the rezoned parcel, to support their argument. We, however, do not read *Buckelew* so narrowly.

¶ 17 While proximity is a factor to be considered in determining standing, a neighborhood or other discrete area may be affected by zoning changes and not all landowners

need to be directly adjacent to the subject property to be harmed by the proposed rezoning. *See Armory Park v. Episcopal Community Servs.*, 148 Ariz. 1, 6, 712 P.2d 914, 919 (1985) (action on behalf of neighborhood affected by meal center for indigents). Thus, the mere fact that the Thompson and Challis properties are not adjacent to the rezoned parcel does not alone preclude standing.[1]

¶ 18 Next, appellees argue that the harms claimed to the Thompson and Challis properties are no more than "vague and general allegations of injury" and are insufficient to constitute the particularized damages that are required to confer standing. They therefore maintain that the evidence does not support the trial court's finding of particularized harm to their properties. We agree as to Challis but disagree as to the Thompsons.

¶ 19 Our supreme court has determined that "the question of standing in Arizona is not a constitutional mandate since we have no counterpart to the 'case or controversy' requirement of the federal constitution." *Armory Park*, 148 Ariz. at 6, 712 P.2d at 919 (*quoting State v. B Bar Enter.*, 133 Ariz. 99, 649 P.2d 978 (1982)). Nonetheless, in addressing questions of standing, we are confronted with "questions of prudential or judicial restraint," *id.*, and will impose that restraint to insure that "the case is not moot and that the issues will be fully developed by true adversaries." *Id.*

¶ 20 To have standing, a plaintiff "must plead damage from an injury peculiar to him or at least more substantial than that suffered" by the community at large. *Buckelew*, 188 Ariz. at 452, 937 P.2d at 374. Allegations of general economic or aesthetic losses in an area, without instances of injury particular to the plaintiff, are generally not sufficient to create standing. *Id.* at 451, 937 P.2d at 373.

¶ 21 Challis owns property approximately 1,875 feet away from the subject property. Her property is neither near the Thompsons' property nor in the Thompsons'

neighborhood. Challis did not appear at the hearings. Significantly, no evidence was presented about any particular harm to Challis's property, other than the general allegations of harm contained in the complaint and the testimony of appellants' expert about general harm to the area around the parcel in the form of increased traffic and noise, etc. We hold that this evidence was insufficient for the trial court to find that Challis had standing.

¶ 22 Unlike Challis, the Thompsons have a residence and a tire business that are located only approximately 750 feet from the subject property, across State Route 260. Part of their property is also zoned commercial and borders on an RV park and sales facility. Also, Carole Thompson was the only appellant who presented evidence about harm to her property.

¶ 23 She testified that the rezoning of the property would "adversely affect" her use and enjoyment of her property because of "[t]he greatly increased traffic load, the noise and pollution from the cars, possible increase in crime ... in addition to ... light pollution from the parking lot lights at the proposed Wal–Mart Center." Significantly, her testimony was supported by appellants' expert witness, who was an "urban and land planner."

¶ 24 Because the Thompsons' property was 750 feet from the proposed project, and given the nature of the project itself, the harm to her property was "different [from] and greater than" that to other property located further away. Its proximity makes it sufficiently likely that traffic, litter, drainage, and noise from the project will significantly affect it. The evidence thereby supports the trial court's conclusion that the Thompsons will suffer special damages that will be more substantial than those suffered by the community at large. *See Buckelew*, 188 Ariz. at 452, 937 P.2d at 374. We therefore conclude that the trial court did not abuse its discretion in finding particularized harm to the Thompsons and holding that they had standing to contest the rezoning.

---

1. Appellees also argue, without support, that the distance of 300 feet is significant because A.R.S. section 9–462.04(A)(3), relevant to notice of public hearings, uses that distance for deciding which property owners are entitled to first class mail notification of proposed rezoning.

REZONING ISSUES

(A) *May rezoning be initiated before land has been annexed?*

¶ 25 As previously set forth, on November 4, 1997, the City Council adopted Ordinance 427, approving the annexation of the subject parcel, which was then located in an unincorporated portion of Navajo County. The annexation, however, did not become effective until thirty days later on December 3, 1997. See A.R.S § 9–471(D). Prior to the effective date of annexation, the City posted notices and held public hearings on proposed Ordinance 428, which would rezone a portion of the parcel to C–2, general commercial status.

¶ 26 On December 1, 1997, the City Council voted to adopt Ordinance 428. Pursuant to statute, the rezoning did not become effective until December 31, 1997. Appellants filed their complaint for special action relief on March 2, 1998.

¶ 27 Appellants maintain that the City violated A.R.S. section 9–471(L) because it held hearings and voted to change the zoning *before* the land was officially annexed on December 3, 1997. A.R.S. section 9–471(L) states:

> A city or town annexing an area shall adopt zoning classifications which permit densities and uses no greater than those permitted by the county immediately before annexation. *Subsequent* changes in zoning of the annexed territory shall be made according to existing procedures established by the city or town for rezoning of land.

(Emphasis added.) Appellants read the word "subsequent" to mean that hearings or votes regarding prospective rezoning are barred prior to the actual annexation of a parcel of land. We disagree.

■ ¶ 28 Statutory interpretation is a matter of law that we review *de novo*. *State Compensation Fund v. Superior Court,* 190 Ariz. 371, 374, 948 P.2d 499, 502 (App.1997). "The language of a statute is the most reli-

able evidence of its intent." *Walker v. City of Scottsdale,* 163 Ariz. 206, 209, 786 P.2d 1057, 1060 (App.1989).

■ ¶ 29 Nothing in the plain language of the statute prohibits the City from commencing rezoning proceedings before a parcel has been annexed. The statute merely requires that, upon annexation, a parcel retain zoning classifications that permit uses no greater than had been permitted prior to annexation. Ordinance 427, approving the annexation of the property, translated the county zoning categories into equivalent City zoning categories, thereby satisfying that requirement.

¶ 30 As noted, the statute also requires that any "subsequent changes" in the zoning be carried out "according to existing procedures." Appellants do not question that the appropriate procedures were followed and have even stipulated that adequate notice of the rezoning was given to them.[2] Nevertheless, they fault the City for having started the rezoning process before the annexation was final. But nothing in the statute prohibits a city from beginning the rezoning process prior to the effective date of annexation. If the legislature had wanted such a delay, it could have written the statute accordingly. As written, however, the statute does not require that the rezoning process be initiated only "subsequent to the annexation;" it simply provides that any "subsequent changes" be carried out in compliance with the appropriate rezoning provisions.

¶ 31 In support of our interpretation, we find persuasive the reasoning of *Schanz v. City of Billings,* 182 Mont. 328, 597 P.2d 67, 69 (1979). In *Schanz,* the City of Billings Zoning Commission transmitted its recommendation for the rezoning of a parcel of land to the City Council five hours before the Council acted on a resolution annexing the parcel. *Id.* at 69. Plaintiffs in that case similarly complained that the rezoning was invalid because it took place before the annexation had been approved.[3] The Montana Supreme Court held that the ordinance did not specifically prohibit the Zoning Commis-

---

2. Appellants maintain, however, that notice was defective as to the county because the City did not send written notice of the rezoning hearings to it. This issue is discussed further below.

3. The City was required to affirm or change the zoning classification within 90 days of passage of a final resolution for annexation.

sion from sending its recommendation to the Council before the final annexing resolution was passed and refused to impose such a requirement. *Id.* at 69–70. The court therefore concluded that the property had been properly rezoned. *Id.* at 70.

¶ 32 The plaintiffs in *Schanz* also complained that their state constitutional rights had been violated by the procedures followed. *Id.* The court, however, disagreed because appropriate notice had been given and all required hearings held, and because the plaintiffs had been given a reasonable opportunity to participate but failed to do so. *Id.*

¶ 33 Appellants similarly argue that Arizona statutes establish a "measured process for annexation and rezoning so as to permit effective public input into these decisions." They maintain that residents "cannot have meaningful input into such decisions if they do not have time to hear about a proposed decision" and that the City's actions to "rush" the rezoning therefore "impinged on the public's rights [sic] to participate." But appellants concede that they had appropriate notice and that applicable hearing procedures were followed. Nothing in this case even suggests that appellants' opportunity to protest the proposed rezoning was diminished by the initiation of the rezoning process prior to the effective date of annexation. Therefore, because A.R.S. section 9–471(L) does not prohibit a city from initiating or approving a subsequent change in zoning while annexation is pending, we conclude that the rezoning here was valid.

(B) *Does A.R.S. section 9–462.07 apply?*

¶ 34 Appellants next argue that the rezoning was invalid because the City failed to comply with A.R.S. section 9–462.07. Section 9–462.07(A) sets forth the procedures by which a city in a "county not having a county zoning ordinance applicable to the unincorporated territory" may exercise its zoning powers "both to territory within its corporate limits and to that which extends a distance of three contiguous miles in all directions of its corporate limits and is not located in a municipality." Appellants argue that this statute controls here, but we disagree.

¶ 35 When construing statutes, this court will "adopt a construction ... that reconciles it with other statutes, giving force to all statutes involved." *Lewis v. Arizona Dep't of Econ. Sec.*, 186 Ariz. 610, 614, 925 P.2d 751, 755 (App.1996). Section 9–462.07(A) applies only when the municipal body is exercising its zoning power in a county "not having a county zoning ordinance applicable to the unincorporated territory." Here the subject property did have county zoning applicable to it while it was still in the county. Thus, A.R.S. section 9–462.07(A) does not apply.

(C) *Did appellants stipulate that appropriate notice was given the county?*

¶ 36 Appellants further argue that the rezoning was invalid because the City failed to comply with the requirements of A.R.S. section 9–462.04(A)(2), which provides:

In proceedings involving rezoning of land which abuts other municipalities or unincorporated areas of the county or a combination thereof, copies of the notice of public hearing shall be transmitted to the planning agency of such governmental unit abutting such land. In addition to notice by publication, a municipality may give notice of the hearing in such other manner as it may deem necessary or desirable.

Appellees respond that this issue has been waived because appellants stipulated as to notice to the county in the trial court.

¶ 37 At the hearings, appellants' counsel stated: "Legally sufficient notice was given in publication, and on the property, if the property had been part of the municipal limits. That I will stipulate to, your honor." In his subsequent argument to the court, appellants' counsel nonetheless argued that appellees had failed to comply with the requirements of section 9–462.04(A)(2) by failing to give proper notice to the county.

¶ 38 In response, appellees' counsel noted that he was "confused" because he "thought [appellants' counsel] stood here and said he would stipulate that all notice requirements were given and everything was done right." The trial court ultimately found that appellants' stipulation "precluded" a finding that

the City had not complied with section 9–462.04(A)(2), impliedly agreeing that notice to the county was included in appellants' stipulation on notice.

¶ 39 On appeal, appellants argue that they never stipulated that proper notice had been given to the county. They maintain that the trial court was wrong in finding that they had and reurge their argument that the rezoning was invalid because the county was not given proper notice.

¶ 40 The record indicates that there was some confusion as to the extent of appellants' stipulation. However, based on our review of the record, and of the context in which the stipulation was made, we conclude that appellants' attorney was referring only to the notice given to appellants and not to the county. We will therefore consider this argument on appeal.

(D) *Was direct notice to the county required?*

¶ 41 Appellants argue that the rezoning is invalid because the City failed to give direct notice to the county planning commission as required by A.R.S. section 9–462.04(A)(2) whenever the rezoned land abuts the county.[4] However, notice to the county is required only when the land being rezoned "abuts other municipalities or unincorporated areas."

¶ 42 The purpose of A.R.S. section 9–462.04(A)(2) is to provide notice to the county when it will have land abutting property that may be rezoned by the City. But under the facts here, there could not have been county land adjacent to the rezoned property at the time of rezoning. If the annexation did not take place, then the property would not have been rezoned by the City, and the county would have had no interest in the proposed rezoning. If, as happened here, the annexation would take place, then there would not

have been any adjacent county land **at the time of the rezoning**, because there was other land located between the subject parcel and the City boundary. Consequently, the interest of the county, which otherwise required notice under the statute, was not present in this case. We therefore conclude that direct notice to the county was not required here.[5]

## ATTORNEYS' FEES

¶ 43 Appellants have requested attorneys' fees pursuant to A.R.S. section 12–2030, which provides for the award of fees in a mandamus action "against the state or any political subdivision thereof." Because appellants are not the prevailing parties, and without considering whether the statute is applicable, we decline their request.

## CONCLUSION

¶ 44 For the foregoing reasons, we affirm the trial court's dismissal of the complaint in this case.

CONCURRING: NOEL FIDEL, Presiding Judge.

NOYES, Judge, Dissenting.

¶ 45 In Arizona, the State has, by statute, preempted the field of zoning legislation. *See Levitz v. State,* 126 Ariz. 203, 205, 613 P.2d 1259, 1261 (1980). These procedural requirements are jurisdictional in nature. *See Hart v. Bayless Inv. & Trading Co.,* 86 Ariz. 379, 388, 346 P.2d 1101, 1108 (1959) (reviewing statutory notice for zoning action). "Such a rule is no mere 'legal technicality'; rather it is a fundamental safeguard assuring each citizen that he will be afforded due process of law." *Id.* Municipalities must follow the procedures set out in the State statutes. *See id.* The statutory procedures

---

4. At the hearings, Adrian Williamson, the Show Low city planner testified about the notice procedures. The sole question appellant's counsel asked him on cross-examination was "Sir, was there a written transmittal of any type to the Navajo County planning agency of this proposed rezoning by the City of the Wal–Mart Supercenter site?" Williamson responded: "Not that I'm aware of."

5. Appellants have made one further argument: that the development agreement between the City and Wal–Mart is invalid because the zoning changes are invalid. Because of our disposition of the zoning issue, we need not reach this matter.

must be strictly followed, and an ordinance that does not comply with the statutory procedures is void. *See Levitz*, 126 Ariz. at 205, 613 P.2d at 1261; *Committee for Neighborhood Preservation v. Graham*, 14 Ariz.App. 457, 458, 484 P.2d 226, 227 (1971); *Manning v. Reilly*, 2 Ariz.App. 310, 313, 408 P.2d 414, 417 (1965).

¶ 46 In this case, the City Council adopted an ordinance annexing the property on November 4, 1997. Under State law, this annexation was not effective for thirty days, until after December 4, 1997. *See* A.R.S. § 9–471(D). Even though the property was not yet within the city limits of Show Low, during the months of October and November 1997, the City undertook actions purporting to rezone the subject property from agricultural to general commercial. These actions included the October 24th posting and publication of notice that the Show Low Planning and Zoning Commission would hold a hearing on the issue. This was forty-one days prior to the annexation of the property. On November 12, 1997, twenty-two days prior to the annexation of the property, the City Planning and Zoning Commission held a hearing and voted to recommend the rezoning of the property. On November 18, 1997, sixteen days prior to the annexation of the property, the Show Low City Council held a hearing on the zoning change. Then, on December 1, 1997, three days prior to the City obtaining jurisdiction over the property, the City Council voted to rezone the property from agricultural to general commercial.

¶ 47 Arizona's zoning and planning laws set up a measured, two-tiered process for annexation and rezoning so as to permit effective public input into these decisions. *See* A.R.S. § 9–462.04 (setting forth public notice and hearing provisions for rezoning). Local residents cannot have meaningful input into such decisions if they do not have time to hear about a proposed decision, gather the facts about it, and then mobilize others to appeal to elected officials or the courts. *See* A.R.S. § 9–462.04(H) (rezoning cannot be made effective until at least thirty days after approval). The City's actions here to rush a rezoning application through the process un-

lawfully impinged on the public's right to participate.

¶ 48 A statute such as A.R.S. section 9–471(L), which requires a city to apply equal or more restrictive zoning to a newly annexed parcel, is written to protect neighboring property owners, not the owners of the property being annexed, and certainly not for the procedural convenience of the municipal government. This statute allows time for the public to become educated on the issues and to formulate opinions and allow those opinions to be heard regarding any subsequent rezoning of the property. It prevents a city government from entangling the issues of relaxation of the allowed land use with the issues of annexation, thereby masking the former from public attention. It prevents a city government from hastily relaxing the land use regulations on a parcel of property that, at all times prior, and in this case even at the time of the city's actions, had been outside its jurisdiction. The Legislature has mandated that any such relaxation in zoning restrictions not be done as part of the transition of jurisdiction from one governmental subdivision to another, but instead that it be, as that statute plainly states, *subsequent* to the jurisdictional change and in accordance with existing procedures. *See* A.R.S. § 9–471(L). In this case the City ignored this requirement; it relaxed the zoning requirement *prior* to obtaining jurisdiction over the property.

¶ 49 The only way that the City of Show Low could have had jurisdiction to pass an ordinance relaxing the zoning on the Wal-Mart parcel at the time it did—prior to the effective date of the annexation—would have been if it had complied with A.R.S. section 9–462.07 regarding extraterritorial jurisdiction. Under the general municipal zoning enabling statute, A.R.S. section 9–462.01(B), a city may only zone territory within its boundaries. The extraterritorial jurisdiction statute, A.R.S. section 9–462.07, provides the exclusive procedural vehicle by which a municipality may reach beyond its borders and extend its zoning authority into unincorporated areas of the county. The City did not comply with that statute.

¶ 50 I respectfully dissent from the decision to affirm this jurisdictionally defective rezoning decision.