**CW GOVERNMENT TRAVEL, INC.,
d/b/a Carlson Wagonlit Travel,
Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 99–967C.**

United States Court of Federal Claims.

May 3, 2000 [1].

---

1. An earlier version of this opinion was filed on April 7, 2000, subject to a protective order. The parties proposed no redactions, but two "correc-

Lars E. Anderson, McLean, Virginia, with whom were, Michael W. Robinson; Wm. Craig Dubishar; Paul N. Wengert; and Sharon L. Larkin, for plaintiff.

Kathleen Zahorik Quill, Washington, D.C., with whom were Acting Assistant Attorney General David W. Ogden, Director David M. Cohen, and Assistant Director Todd M. Hughes, for defendant.

### Revised Opinion and Order

WEINSTEIN, Judge.

Defendant in this pre-award bid protest case,[2] has moved to dismiss on the ground of mootness, because the challenged solicitation has been withdrawn. Although the parties have requested oral argument, the court deems it unnecessary.

### BACKGROUND

The Department of the Navy (Navy) issued a request for proposals (RFP) on March 12, 1999, for a one-year contract, with six-month options extending the contract up to five years. The RFP solicited proposals for providing travel services to the Navy, in both the United States and various foreign locations. The contractor was to be paid by commissions obtained from airlines and other travel service providers.

After the Comptroller General reviewed and denied its protest, plaintiff CW Government Travel Inc. (Carlson) filed a pre-award bid protest claim in this court seeking declaratory judgment, an injunction, bid preparation and proposal costs, and protest costs. Carlson's primary stated concern has been the RFP's commission-based, rather than transaction-based, pricing structure. The airline industry has steadily reduced its commissions, from ten percent in 1994, to eight percent in 1997, to five percent in 1999, *see CW Gov't Travel, Inc.*, No. B–283408 et al.,

tions." The court reissues that opinion to make various revisions that do not affect the outcome of the April 7 opinion. (Nor do the revisions incorporate additional facts protected under the January 4, 2000 protective order.)

2. *See* 28 U.S.C. § 1491(b)(1) (1994 & Supp. III 1997).

99–2 CPD ¶ 89, at 2 n. 2 (Nov. 17, 1999), which Carlson continuously has alleged renders it impossible for any contractor to fulfill the RFP.

Carlson also challenges the solicitation for excessive requirements beyond the Navy's minimum needs and for using government employees to augment the incumbent contractor's workforce in violation of FAR § 37.104(b).[3] Plaintiff has stated, at various points during the litigation, that it did not— and would not—bid on the challenged solicitation.[4]

On January 28, 2000, after Carlson filed its protest in this court, the Navy canceled the solicitation and indicated that it intended to resolicit proposals. According to a February 15, 2000 notice posted on Commerce Business Daily's internet website, see Com. Bus. Daily, at <http://cbdnet.access.gpo.gov/index.html>, the new RFP will allow proposals for procurements on a fee basis, not on a commission basis. Also, the contracting officer's sworn declaration stated that fees, not commissions, are contemplated. Declaration of Velma Corey ¶ 4 (Feb. 17, 2000) (Attachment B to defendant's motion to dismiss) (new solicitations will provide for a fee-based, pricing structure).

Following cancellation of the RFP and the agency's notice that it would be revised and reissued, defendant moved to dismiss the case for mootness. Carlson has asked this court, instead, to order defendant to comply with the limited discovery order and to stay this case, except for discovery, until the Navy issues the new RFP, at which time it would file an amended complaint. Plaintiff claims that defendant's action constitutes a "subterfuge" to evade plaintiff's discovery requests. It also argues that mootness/justiciability concerns need not trouble an Article I court such as this.

3. Citations to the "FAR"—Federal Acquisition Regulation—refer to the 1999 version of title 48 of the Code of Federal Regulations.

4. The Navy did not accept bids and left the RFP indefinitely open (without a closing date) pending the outcome of the protest in this case and

## DISCUSSION

### Standard of Review

■ Justiciability (including mootness) is a question of subject matter jurisdiction and may be raised at any time. *See North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971). When the court addresses a "facial" challenge to the complaint based on subject matter jurisdiction, *see* Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC), the court must assume that the facts alleged in the complaint are true and correct. *See Cedars–Sinai Med. Ctr. v. Watkins,* 11 F.3d 1573, 1583 (Fed.Cir.1993). However, as in this case, when the court addresses a "factual" challenge to the complaint, also under RCFC 12(b)(1), *see Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977) (noting that "factual" attacks on subject matter jurisdiction should use Rule 12(b)(1) rather than Rule 56), the court may look beyond the complaint to determine jurisdictional facts. *See Land v. Dollar,* 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947) ("[W]hen a question of the [trial] Court's jurisdiction is raised, either by a party or by the court on its own motion, the court may inquire by affidavits or otherwise, into the facts as they exist." (citations omitted)); *Moyer v. United States,* 190 F.3d 1314, 1318 (Fed.Cir.1999) (court may fact-find when jurisdictional facts are challenged); *Bayou des Familles Dev. Corp. v. United States,* 130 F.3d 1034, 1040 n. 7 (Fed.Cir.1997) (court may look to prior litigation of record). The party invoking jurisdiction bears the burden of proof, *see Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988); *see also Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), by a preponderance of the evidence. *See McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936).

that of American Express Travel Related Services Co. in *American Express Travel Related Servs. Co. v. United States,* No. 99–980C (Fed.Cl., Mar. 9, 2000) (joint stipulation of dismissal). *See* Initial Status Conference Transcript at 5, 8 (Jan. 21, 2000).

## Mootness—Definition

Defendant argues that its cancellation of the RFP eliminates "any possible basis on which [plaintiff] might prevail," *W.R. Cooper Gen. Contractor, Inc. v. United States*, 843 F.2d 1362, 1364 (Fed.Cir.1988), and makes this case nonjusticiable as moot.

Mootness is defined by Black's Law Dictionary as "[h]aving no practical significance," as "hypothetical or academic," or as in: "the question on appeal became moot once the parties settled their case." *Black's Law Dictionary* 1024 (7th ed.1999); *see also* Ronald A. Carp & Ronald Stidham, *Judicial Process in America* 89–90 (4th ed.1998) (defining mootness as "when the basic facts or the status of the parties have significantly changed in the interim between when the suit was first filed and when it comes before the judge"). The North Carolina Court of Appeals defined mootness as follows:

> Whenever, during the course of litigation it develops that the relief sought has been granted or that the questions originally in controversy between the parties are no longer at issue, the case should be dismissed, for courts will not entertain or proceed with a cause merely to determine abstract propositions of law. An appeal which presents a moot question should be dismissed.

*Wilson v. Wilson*, 134 N.C.App. 642, 518 S.E.2d 255, 256–57 (1999).

Both federal and state courts rely on prudential tests of mootness or ripeness in determining whether a claim is precluded as a practical matter by prior action of the parties or court. *See, e.g., Carroll County Ethics Comm'n v. Lennon*, 119 Md.App. 49, 703 A.2d 1338, 1342 (1998) ("Unlike the Article III constitutional constraints on the federal courts ... our mootness doctrine is based entirely on prudential considerations."); *see also Blanchard v. Show Low Planning & Zoning Comm'n*, 196 Ariz. 114, 993 P.2d 1078, 1082 (Ct.App.1999) ("questions of prudential or judicial restraint ... insure that the case is not moot" (quotation omitted)); *Kona Old Hawaiian Trails Group v. Lyman*, 69 Haw. 81, 734 P.2d 161, 165 (1987) (mootness "is one of the prudential rules of judicial self-governance"); *Yarbrough v. Federal Land Bank Ass'n*, 616 So.2d 1327, 1332–33 (La.Ct.App.1993) (noting general principles of mootness recognized under state law). A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969).

Exceptions created by the Supreme Court to the mootness principle apply either when a defendant voluntarily ceases a challenged practice, *see Northeastern Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993), or when a case is capable of repetition, but will evade review. *See Honig v. Doe*, 484 U.S. 305, 318, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988); *see also DeFunis v. Odegaard*, 416 U.S. 312, 318–20, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974) (rejecting both exceptions and finding the case moot). However, the voluntary cessation exception may be refuted when there clearly is no "reasonable expectation" that the alleged violation will recur and "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979) (citations omitted). The capable of repetition/evading review exception is conditioned on findings that the duration of the challenged action is too short to have the issue fully litigated and there is a "reasonable likelihood" that the complaining party again will suffer the same injury, *see Torrington Co. v. United States*, 44 F.3d 1572, 1577 (Fed.Cir.1995), and is invoked in only "exceptional situations." *Spencer v. Kemna*, 523 U.S. 1, 17, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998) (quotation omitted).

## Applicability of Mootness Doctrine in Non–Article III Courts

Congress created this court under Article I of the Constitution. *See* Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, § 105(a), 96 Stat. 25, 27 (1982) (codified, as amended, at 28 U.S.C. § 171 (1994)). The constitutional "case or controversy" justiciability doctrine is said to derive from Article

III of the Constitution. *See* U.S. Const. art. III, § 2; *Flast v. Cohen*, 392 U.S. 83, 94, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968) ("[T]he judicial power of federal courts is constitutionally restricted to 'cases' and 'controversies.' "). However, many justiciability precepts—including mootness, standing, and ripeness—have been invoked by this and other non-Article III courts on prudential grounds. *E.g., Massachusetts Bay Transp. Auth. v. United States*, 21 Cl.Ct. 252, 257–58 (1990) ("Although established under Article I, the Claims Court traditionally has applied the case or controversy requirement unless jurisdiction conferred by Congress demands otherwise."), *rev'd on other grounds*, 129 F.3d 1226 (Fed.Cir.1997); *Zevalkink v. Brown*, 102 F.3d 1236, 1243 (Fed.Cir.1996) (approving adoption by Court of Veterans Appeals, an Article I court, of the "case or controversy" limitations on prudential grounds).

Congress allows this court to enter final judgments under 28 U.S.C. § 2519 (1994), which states: "A final judgment of the United States Court of Federal Claims against any plaintiff shall forever bar any further claim, suit, or demand against the United States arising out of the matters involved in the *case or controversy*." *Id.* (emphasis added). This appears to contemplate that the court's power to enter final judgments is predicated on "case or controversy" limitations.

Similar statutory authorizations for other Article I courts utilizing the phrase "case or controversy" have been interpreted as imposing "case or controversy" limitations. *See Community Credit Union Servs., Inc. v. Federal Express Servs. Corp.*, 534 A.2d 331, 333 (D.C.1987) (D.C. Court of Appeals, an Article I court, interpreting "case or controversy" language in D.C.Code Ann. § 11–705(b) to impose "case or controversy" justiciability limitations); *Loftus v. Commissioner*, 90 T.C. 845, 856, 1988 WL 42888 (1988) (the United States Tax Court, an Article I court, interpreting "a case of actual controversy" under 26 U.S.C. § 7476 to require application of "case or controversy" limitations), *aff'd*, 872 F.2d 1021 (2d Cir.1989) (unpublished table decision).

The Supreme Court has indicated that "non-Article III tribunals ... exercise the judicial power of the United States." *Freytag v. Commissioner*, 501 U.S. 868, 889, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991); *cf. Williams v. United States*, 289 U.S. 553, 565, 53 S.Ct. 751, 77 L.Ed. 1372 (1933) (Court of Claims, predecessor to this court, was considered an Article I court during part of its existence, but nevertheless exercised "judicial power"). It has been held that the exercise of "judicial power" gives an Article I court inherent powers to control its proceedings, such as disciplining attorneys. *See In re Bailey*, 182 F.3d 860, 864 n. 4 (Fed.Cir. 1999); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (noting that courts have implied powers, which are governed "by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases" (quotation omitted)). This same inherent power allows this court to invoke the mootness doctrine.

Another feature of the Court of Federal Claims that argues for case or controversy applicability is that its decisions are appealable to the United States Court of Appeals for the Federal Circuit, *see* 28 U.S.C. § 1295(a)(3) (1994), which is an Article III court. *See Penda Corp. v. United States*, 44 F.3d 967, 970 (Fed.Cir.1994); *Seaboard Lumber Co. v. United States*, 903 F.2d 1560, 1562 (Fed.Cir.1990).

This court previously has dismissed a bid protest claim for mootness due to cancellation of the award. *See CCL Serv. Corp. v. United States*, 43 Fed.Cl. 680, 688–89, 693 (1999).

*Prudential Grounds for Mootness Dismissal*

■ Dismissal for mootness is warranted here, for prudential reasons, because interim events have shown that there is no "reasonable likelihood" the voluntarily ceased activity will recur and the court can grant no " 'effectual relief' " to prevent the case from becoming moot. *See Calderon v. Moore*, 518 U.S. 149, 150, 116 S.Ct. 2066, 135 L.Ed.2d 453 (1996) (quoting *Mills v. Green*, 159 U.S. 651, 653, 16 S.Ct. 132, 40 L.Ed. 293 (1895)). Furthermore, the issue involved in this case

is not "capable of repetition, but evading review" because Carlson is not reasonably likely to suffer the same alleged injury again. *See Torrington Co.,* 44 F.3d at 1577.

Specifically, Carlson's paramount objection, to the commission-based pricing structure, has been remedied. The contracting officer has sworn under penalty of perjury that the new RFP will include a fee-based pricing structure. Plaintiff proffers no evidence to suggest that a commission-based pricing structure will be used.

Also, by canceling the solicitation, the Navy already has provided Carlson with relief from any allegedly excessive requirements in the challenged solicitation. *See Chas. H. Tompkins Co. v. United States,* 43 Fed.Cl. 716, 723 (1999) (noting that the normal remedy for restrictive government requirements is cancellation of the solicitation). There is no other injunctive or declaratory relief that this court could award under this solicitation, precisely because it was canceled. *See CCL Serv. Corp.,* 43 Fed.Cl. at 690.

This court has no authority to select a contractor or order award of the contract to a protestor, *see Parcel 49C Ltd. Partnership v. United States,* 31 F.3d 1147, 1153 (Fed.Cir. 1994); *Scanwell Lab., Inc. v. Shaffer,* 424 F.2d 859, 869 (D.C.Cir.1970), but only to stay award or order a new solicitation. *See CACI, Inc.-Fed. v. United States,* 719 F.2d 1567, 1575 (Fed.Cir.1983). In withdrawing the RFP and re-opening the procurement, the Navy has provided the best remedy for Carlson's concerns that could be provided by this court. Also, the ultimate grant of a contract must be left in the first instance to the agency, to which determination the courts must defer. *See Scanwell Lab., Inc.,* 424 F.2d at 869.

Carlson's objection to an alleged illegal augmentation of personnel centers, not on the practice's illegality, but on the presumed disadvantage to Carlson in formulating its bid, because only the incumbent would know the exact number of Navy personnel performing the contract. *See* Initial Status Conference Transcript at 13 (Jan. 21, 2000). There is nothing, however, to indicate that this information would not be provided as part of the new RFP, if necessary for the procurement.[5]

Defendant's cancellation of the solicitation, far from indicating "bad faith," as plaintiff alleges, represents a commendable and salutary government willingness to accommodate the concerns of plaintiff (and perhaps other potential bidders). There is no question that cancellation of a solicitation is permitted by the FAR. *See* FAR § 15.206(e) (indicating that a contracting officer may cancel a solicitation "regardless of the stage of the acquisition"). Furthermore, any analysis of an allegation of government bad faith begins with a presumption that public officials acted in good faith. *See Kalvar Corp. v. United States,* 211 Ct.Cl. 192, 543 F.2d 1298, 1301–02 (1976). The cancellation and resolicitation do not appear arbitrary and capricious, *see* 28 U.S.C. § 1491(b)(4) (arbitrary and capricious standard under 5 U.S.C. § 706 governs review of agency action), responding as they do to concerns with the challenged solicitation. *See American Gen. Leasing, Inc. v. United States,* 218 Ct.Cl. 367, 587 F.2d 54, 58–59 (1978) ("[W]here the Government alleges a reasonable basis for cancelling the solicitation, i.e. a revision in specifications, it is clear plaintiffs must do more than assert what amounts to mere naked charges of arbitrary and capricious action...." (footnote omitted)).[6] Should the new solicitation *not* satisfactorily address plaintiff's (or others') concerns, plaintiff (or others) may, of course, challenge the new solicitation.

### Carlson's Request for Judicial Notice

On March 30, 2000, the court received a letter from Carlson essentially requesting

---

5. As to plaintiff's discovery demand, it is neither in the interest of justice nor efficient to require the government to provide discovery regarding this solicitation, when it may not be relevant to the new one.

6. Because the Navy's cancellation of the solicitation was not arbitrary or capricious, Carlson may not recover bid preparation and proposal costs. *See E.W. Bliss Co. v. United States,* 77 F.3d 445,

447–48 (Fed.Cir.1996) (allowing bid preparation and proposal costs requires showing arbitrary and capricious agency action); *see also* 28 U.S.C. § 1491(b)(2), (4). Furthermore, protest costs may not be recovered. *See* 28 U.S.C. § 1491(b)(2) (noting "any monetary relief shall be limited to bid preparation and proposal costs").

the court to take judicial notice of *City of Erie v. Pap's A.M.*, —— U.S. ——, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000).[7] Carlson suggests that *City of Erie* is applicable to this case and should lead to a contrary result.

In *City of Erie*, an owner of a nude erotic dancing establishment challenged, on First Amendment expressive conduct grounds, Erie's ordinance prohibiting public nudity. *See id.*, 120 S.Ct. at 1388. The Pennsylvania Supreme Court held that the challenged ordinance was unconstitutional. *See id.* at 1389. On September 8, 1999, after the United States Supreme Court, on May 17, 1999, granted Erie's petition for a writ of certiorari to review the Pennsylvania Supreme Court decision, *see* 526 U.S. 1111, 119 S.Ct. 1753, 143 L.Ed.2d 786 (1999), respondent filed an affidavit stating that it had ceased to operate its business and had no intention to operate such a business in the future. *See City of Erie*, 120 S.Ct. at 1390. In its March 29, 2000 decision, the Court held that the case was not moot, because the court could still provide Erie with "relief ... sufficient to prevent the case from being moot" (i.e. by reversing the Pennsylvania Supreme Court

opinion) and that the Court had an interest in "preventing litigants from attempting to manipulate the Court's jurisdiction to insulate a favorable decision from review ...." *Id.* at 1390–91.

As discussed above, unlike in *City of Erie*, this court does not believe that it may grant any relief that might bar this case from being moot. And, far from insulating a favorable decision from review, the actions of this court will not prejudice Carlson's right to challenge the new RFP, if it finds that necessary.

### CONCLUSION

Defendant's motion to dismiss for mootness is granted, without prejudice, and plaintiff's motion for a stay is denied. The clerk shall enter judgment for defendant.

---

7. The letter was improper, since it lacked proof of service and contravened court rules and this court's standard procedures order by being mailed directly to chambers. Nevertheless, the court deemed it a motion for leave to request judicial notice and required plaintiff to serve defendant, and file a certificate of service. *See* RCFC 5(c), (e).